Joseph F. BERG et al., Respondents,

v.

Steven CARLSTROM, Appellant,

and

City of North Mankato, et al., Defendants,

Steven L. CARLSTROM, Appellant,

v.

Joseph F. BERG, et al., Respondent.

No. C7–83–608.

Supreme Court of Minnesota.

May 18, 1984.

period and the other, for whatever reason, was not convicted and sentenced until after the 10-

year period had expired.

John M. Riedy, Mankato, for appellant.

Philip R. Reitan, Mankato, for respondents.

AMDAHL, Chief Justice.

Steven L. Carlstrom appeals from the judgment entered in the Nicollet County District Court in two cases consolidated to determine the existence of a driveway easement and for reformation of certain documents, one of which purported to grant the disputed driveway easement. We affirm.

In 1968, the respondents Joseph F. Berg, et al.'s predecessors in interest John and Lloyd Tschohl owned river bluff property overlooking the valley below the City of North Mankato and particularly suited to residential development. On September 19, 1968, the Tschohl brothers conveyed a portion of their property by contract for deed to LaGow Development Company, Inc., a development company whose principal officers and shareholders are Charles LaGow and Robert J. Lloyd. Because the conveying instrument was never recorded and was lost prior to trial, the record is unclear whether the Berg property was included in that conveyance. Additional confusion results from the fact that on June 18, 1970, the Berg property was quitclaimed by La-Gow Development Company to the Tschohl brothers "for the purpose of satisfying the requirements in that certain contract for Deed dated September 19, 1968 * * *." It would therefore appear that either the Berg property was conveyed to LaGow Development Company by contract for deed and subsequently reconveyed to the Tschohls or that that property always remained the property of the Tschohl brothers. In either event, the Berg property was subsequently developed as part of pro-

posed subdivision Sunrise Acres # 5, platted by LaGow Development Company.

The development company then engaged in a series of negotiations to obtain approval of a final subdivision plat by the North Mankato Planning Division. Approval was conditioned upon LaGow Development's ability to resolve problems relating to access to several parcels of land located to the east and south of the proposed subdivision. Carlstrom's predecessors in title, the Rankins, owned property to the east which, at the time of the proposal, would have been potentially difficult to access. The planning commission suggested either joint development of the two properties or an easement to provide access. The first alternative was unacceptable and, after substantial negotiation, the Rankins and LaGow Development Company finally agreed to a 30-foot wide driveway easement across the southern edge of the property presently owned by the Bergs. As a result of this and other agreements, the planning commission and then the North Mankato City Council approved a final plat for Sunrise Acres # 5. The plat was recorded on January 24, 1969, with the signatures of Charles LaGow and Robert J. Lloyd, representing LaGow Development, and John and Lloyd Tschohl, fee owners of the property.

In May 1969 the city administrator directed the city attorney to prepare driveway and sewer easement documents. The documents were not otherwise legally sufficient, and, in addition, Charles LaGow signed the driveway easement in his individual capacity, not on behalf of LaGow Development. Further, while the Rankins signed the sewer easement over their property, they were not the record owners at that time but rather contract for deed vendees. These driveway and sewer easement documents were dated July 2, 1969, were executed on July 3, 1969, and were recorded on July 10, 1969. By deeds dated March 1, 1982, Charles L. LaGow as president of LaGow Development Company and the Tschohl brothers attempted to correct the invalid 1969 easement deeds by drafting and properly signing a new driveway and sewer easement over the property now owned by the Bergs. These deeds were

invalid because the Tschohl brothers had, during the interim, sold the subject lot to third parties by warranty deed dated May 1, 1979, almost 3 years before attempts were made to correct the 1969 easements; the brothers were no longer the title owners of the property and, as such, the correction attempts were of no avail.

Corrected sewer easements in favor of the city have been executed, but, at the time of trial, the 1969 driveway easement remained deficient because it had originally been executed by Charles LaGow, individually, a stranger to the record title.

Carlstrom had purchased a portion of the Rankins' property by contract for deed on March 6, 1980. On May 1, 1979, the Tschohl brothers had sold one lot of Sunrise Acres to two individuals who thereafter reconveyed the property to Tattersall Builders, Inc., a residential home construction company owned by Thomas and Doris George. Tattersall then successfully sought city approval to subdivide that lot into two lots, one of which was sold to the Bergs by warranty deed of July 14, 1980.

Prior to the completion of the sale of the property to the Bergs, Thomas George learned that Rankin had transferred his interest in his property to Carlstrom. To facilitate the Berg purchase, he contacted Carlstrom by telephone to request a meeting between himself, the Bergs and Carlstrom to ascertain the proposed use of the driveway easement by Carlstrom. That meeting was held prior to the Berg purchase of the property. Carlstrom admitted at trial that he had told the parties at that meeting that the driveway would be 15 to 16 feet wide. The Georges and the Bergs testified to that same understanding. In addition, Carlstrom also admitted that he had made a drawing at this meeting representing the extent to which he planned to use the easement.

The Bergs testified that they relied on Carlstrom's representations in deciding to purchase the lot and in locating their home on the lot once construction began. The Bergs did not request a writing because Carlstrom had said that he was a man of

his word and that they could depend upon him. Carlstrom claimed at trial he had only told the Bergs what his preliminary ideas were for the use of the easement at that time and that he was unsure how he would actually make use of it. He stated that he assured them that, by the time he was through with the construction of the home and the driveway easement, they would be satisfied. The Bergs commenced their action in 1981 when Carlstrom built a 30-foot driveway easement contrary to the parties' understanding.

1. We must first examine the propriety of the reformation. The trial court relied upon the doctrine of estoppel and the existence of a joint venture between LaGow Development Company and the Tschohl brothers to develop Sunrise Acres # 5 to justify reformation. Based upon Carlstrom's oral representations upon which he reasonably should have known the Bergs would rely, the trial court directed reformation, but limited Carlstrom's use to a 16-foot width.

■ Reformation is available when an instrument, because of a mutual mistake or a unilateral mistake accompanied by fraud or inequitable conduct, does not reflect the agreement of the parties. *Theisen's, Inc. v. Red Owl Stores, Inc.,* 309 Minn. 60, 243 N.W.2d 145 (1976). It is also the appropriate remedy when the parties reach a valid agreement but their agreement is invalid for failure to comply with some legal requirement as to manner of execution. *See, e.g., Scofield v. Quinn,* 54 Minn. 9, 55 N.W. 745 (1893).

■ In the matter before us, the parties through a mutual mistake failed to comply with the legal requirements for a valid easement. While the LaGow Development Company officers and the Tschohl brothers agreed to grant Rankin an easement, the deed did not contain the proper grantor: LaGow Development Company. This is exactly the type of mistake that reformation exists to remedy. *See, e.g., Myers v. Town of Milton,* 148 W.Va. 789, 137 S.E.2d 441 (1964).

2. Carlstrom then claims that allegations of unclean hands surrounding his representations to the Bergs about use of the easement are irrelevant to the issue of the 1969 easement transaction. He essentially asserts that an unclean hands defense must relate to the original easement grant transaction between the parties; unclean hands in a collateral matter is not a defense to equitable relief. *Thompson v. Winter,* 42 Minn. 121, 43 N.W. 796 (1889).

■ The authority upon which Carlstrom relies is distinguishable. In *Thompson,* a vendee fully performed a contract for deed and sued for specific performance. The vendor defended by claiming unclean hands since the vendee had not paid him under a separate contract to make improvements upon the land. The court denied the defense because the claim of unclean hands was collateral to the original land contract sale. In the instant case, however, Carlstrom's conduct relates directly to the use of a driveway easement, the subject matter of the original agreement. The unclean hands defense to reformation is not collateral to the transaction at issue in this lawsuit.

■ 3. Finally, Carlstrom contends that a full 30-foot easement must be granted through reformation because the trial court improperly admitted oral evidence to limit the easement use in violation of the statute of frauds. Minn.Stat. § 513.04 (1982). The statute of frauds applies to grants of easements. *Alstad v. Boyer,* 228 Minn. 307, 37 N.W.2d 372 (1949).

■ An agreement may be taken out of the statute of frauds, however, by part performance or by application of the doctrines of promissory or equitable estoppel. This is not a case in which either part performance or promissory estoppel is appropriate to take the agreement to modify the easement use out of the statute of frauds. However, the doctrine of equitable estoppel is applicable to take the agreement out of the statute of frauds and limit the easement width to 16 feet excepting the curvature necessary at the southeast corner of the lot.

The appellant contends that equitable estoppel requires fraudulent conduct and that expressions of future opinion are not governed by the doctrine. *Bremer v. Commissioner of Taxation*, 246 Minn. 446, 454, 75 N.W.2d 470, 475 (1956). However, in our view, Carlstrom's affirmative statements to the Bergs about limiting the use and about being a man of his word, which he thereafter ignored, are arguably akin to fraud. Moreover, there is no question on this record but that the Bergs detrimentally relied.

For the foregoing reasons the decision of the trial court is hereby affirmed.