Lowell NELSON, Respondent,

v.

Gary SMITH, Appellant.

No. C7–83–1886.

Court of Appeals of Minnesota.

May 29, 1984.

Review Denied July 26, 1984.

Dan Plambeck, Stefanson, Landberg & Alm, Moorhead, for respondent.

Paul E. Grinnel, Barry P. Hogan, Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, for appellant.

Heard, considered and decided by WOZNIAK, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Respondent Lowell Nelson brought an action for loss of profits sustained as a result of an alleged breach of a oral farm lease by appellant Gary Smith. Smith contends the lease was unenforceable because it was in violation of the Statute of Frauds. Nelson responded that Smith's conduct estopped him from successfully using that defense. The jury found Smith refused to negotiate the lease with Nelson in good faith and was therefore estopped from claiming the Statute of Frauds as a defense. It awarded Nelson $68,352.00.

Smith appeals from an order of the Clay County District Court denying his motion for judgment notwithstanding the verdict, or, in the alternative, a new trial. We affirm.

## FACTS

In the spring of 1980 Smith orally agreed to lease 331 acres of farmland to Nelson for $65.00 per acre, an additional $51.00 per acre for irrigation equipment and approximately $7.00 per acre for taxes for the crop year 1980. The agreement was reached after negotiations at the office of David Bakken, an adult farm management instructor and service operator, who advised both parties on various aspects of farm leases. Nelson wanted a 3-year lease with the right to annually renew but Smith expressed hesitancy over committment to a fixed rental for 3 years.

This sole issue of rental was resolved by agreement of the parties to renegotiate rent at the end of each year for the 1981 and 1982 growing seasons. The oral agreement was reduced to written terms by Smith's attorney but was not delivered to Nelson until September 10, 1980, after Nelson had already farmed the land for the 1980 crop year. Nelson did not sign the lease because the written lease did not accurately reflect the terms of their oral agreement, claiming Smith agreed that any increase in rentals would be based on reasonable rents charged in the general area of the property leased. Bakken testified that these rates would be in the general range of $75.00 an acre. In the fall of 1980, Smith asked $170.00 per acre plus one-half of the gross receipts in excess of $700.00 per acre. Nelson rejected his demand as being unreasonable. The land wasn't farmed by Nelson in 1981–1982.

The jury that found Smith had refused to renegotiate the contract in good faith in his

demand for $170.00 an acre as opposed to a reasonable rent of $75.00 per acre and awarded Nelson $68,352.00 for loss of profits sustained by Nelson in not being able to operate under the farm lease during 1981 and 1982.

## ISSUES

1. Was there an oral agreement to lease farmland for three years?

2. Was there sufficient evidence of such conduct on the part of the lessor as would estop him from using the Statute of Frauds as a defense to an action on an oral agreement to lease farmland for a period of three years?

3. Was there evidence supporting a finding by the jury that Nelson did not breach the oral contract with Smith?

4. Did Nelson prove lost profits with a reasonable degree of certainty and exactness and use reasonable diligence to minimize his damages?

5. Can Smith claim he was deprived of a fair trial based on alleged bias of a juror when he first challenged that juror in a post-trial motion?

## ANALYSIS

### I

### Parol Evidence Rule

Smith complains initially that there was never an enforceable contract to lease farmland between him and Nelson, at least for the years 1981–1982, because the parties never agreed on the rent for these years. Nelson, supported by Bakken, the farm specialist, testified there was an agreement between the parties that rents for these years would be based on reasonable rents charged in the general area. Smith contends that the testimony of Nelson and Bakken was inadmissible to add to or vary the terms of the lease.

"The parol evidence rule makes inadmissible evidence concerning discussions prior to or contemporaneous with the execution of a *written* instrument when that evidence contradicts or varies the terms of the *written* agreement." *Material Movers, Inc. v. Hill*, 316 N.W.2d 13, 17 (Minn.1982) (emphasis added). But there is no written instrument here and so the parol evidence doctrine does not apply. This then created a fact issue for the jury. "The terms of a disputed contract are for the jury to decide, and an appellate court will not overturn the jury's resolution of factual issues if, on the record, it could reasonably have made such findings." *Cardinal Consulting Co. v. Circo Resorts, Inc.*, 297 N.W.2d 260, 265 (Minn.1980). The jury's finding of an oral agreement of Nelson to lease the Smith farmland at a rental rate similar to that charged in the general area was supported by the evidence.

### II

### Estoppel

There is no dispute that the Statute of Frauds, as embodied in Minn.Stat. § 513.05 (1982), would be a defense to Nelson's action if its effect is not vitiated by some fraudulent conduct on the part of Smith:

Every contract for the leasing for a longer period than one year or for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the lease or sale is to be made ....

Minn.Stat. § 513.05 (1982).

Nelson contends there was such conduct, alleging numerous untrue representations and promises made by Smith upon which Nelson relied to his detriment. He claims these misrepresentations constitute the basis for applying the doctrines of promissory and equitable estoppel. He is correct. An agreement may be exempted from the Statute of Frauds by application of those doctrines. *Berg v. Carlstrom*, at 7, 347 N.W.2d 809 at 812 (Minn. April 27,

1984). When an application of the Statute of Frauds is used to protect, rather than prevent, a fraud, equity requires that the doctrine of equitable estoppel be applied. *W.H. Barber Co. v. McNamara-Vivant Contracting Co.*, 293 N.W.2d 351, 357 (1979). Certain conditions must exist to invoke the doctrine:

1. There must be conduct—acts, language or silence—amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon.... 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse, in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.

*Lunning v. Land O'Lakes*, 303 N.W.2d 452, 457 (Minn.1980) (emphasis omitted), *quoting*, 3 J. Pomeroy, *A Treatise on Equity Jurisprudence* § 805 (5th ed. 1941).

▪ Did Smith make representations that satisfy these conditions? A jury could find that he promised to rent his land on a reasonable basis at rates comparable to those commonly charged in the area; that he so promised with the intention that Nelson take possession of the land; that Nelson relied upon these representations in entering into and farming the land in 1980; and that Nelson, in order to profitably farm said land, purchased additional farm equipment and prepared part of Smith's land for the 1981 crop. There was sufficient evidence from which a jury could find equitable estoppel. We, therefore, need not address the applicability of promissory estoppel.

## III

### Contract Breach

▪ But Smith further contends that, even though a contract may exist, Nelson breached it by failing to negotiate a reasonable price following rejection of Smith's written proposal. Smith made but one offer, $170.00 per acre plus a share of the gross profits, stating it was his final offer. He claims that offer is based upon the fact that Nelson realized a net profit of $450.00 per acre in 1980. Therefore, he contends the offer of $170.00 per acre and a share of the profits was not unreasonable. In addition to this offer, Smith failed to provide Nelson with a written lease until he had already put the land to crop in 1980, and telling Nelson "there's ways of getting around that" when reminded that the oral agreement was to base rental increases on area rates. These matters, cumulatively considered, were sufficient evidence from which a jury could reasonably find no breach of contract by Nelson.

▪ In reviewing this verdict, we must consider the evidence in the light most favorable to the prevailing party and the verdict will not be disturbed if the evidence tends to support it. *Kuehl v. National Tea Co.*, 310 Minn. 48, 50, 245 N.W.2d 235, 237 (1976). It does, and we cannot substitute our own judgment for that of the jury. *Cardinal Consulting Co.*, 297 N.W.2d at 265.

## IV

### Damages

▪ The jury decided Nelson had lost some farming profits as a result of Smith's

conduct that he would have otherwise realized. Lost profits are usually difficult to prove but they

"may be recovered where they are shown to be the natural and probable consequences of the act or omission complained of and their amount is shown with a reasonable degree of certainty and exactness. This means that the nature of the business or venture upon which the anticipated profits are claimed must be such as to support an inference of definite profits grounded upon a reasonably sure basis of facts.... This rule does not call for absolute certainty."

*Cardinal Consulting Co. v. Circo Resorts, Inc.*, 297 N.W.2d 260, 266 (Minn.1980) (citations omitted). Proof of loss of profits cannot be speculative or conjectural. *Id.* at 267. Such damages are recoverable for breach of a farm lease. *Poppen v. Wadleigh*, 235 Minn. 400, 51 N.W.2d 75 (1952). What is necessary is competent testimony such as that given in *Poppen:*

The crop season for which damages are sought was over at the time of the trial. The witnesses were particularly well qualified to give their opinion as to the profits which the two tracts would have earned. They owned comparable farms, farmed under comparable conditions, and sold their crops in the same market. The witnesses were well informed as to the expenses of growing crops in that area.... The certainty of plaintiff's proof with respect to profits of a past growing season was as great or greater than the certainty in fixing business profits lost through an eviction from business premises.

*Id.* at 405–06, 51 N.W.2d at 78.

■ David Bakken, a farm management specialist familiar with Nelson's farming operation since 1975, utilized a computer in determining Nelson's loss of profits, considering yield history, soil types, irrigation, general conditions of the land and surrounding lands, cash flow problems, prices at which crops were sold in 1981 and 1982 and rents being charged in the surrounding area. He concluded a $75.00 an acre rental to be reasonable and Nelson was willing to pay this. The amount of lost profits was shown with a reasonable degree of certainty and exactness.

■ Smith makes one last argument. If, in fact, Nelson was damaged, he had a duty to use reasonable diligence to minimize his damage. He is correct. As a nonbreaching party, Nelson had the duty to use reasonable diligence to minimize his damages. *Lesmeister v. Dilly*, 330 N.W.2d 95 (Minn.1983), *Frank v. Jansen*, 303 Minn. 86, 226 N.W.2d 739 (1975). Nelson did lease land from others in 1981 and 1982 and Smith claims this to be proof Nelson did not sustain any damages. Nelson, on the other hand, claims these were not replacement lands but land he would have leased regardless of the Smith lease because he was in the process of expanding his entire farm operation. In respect to this issue, the Court specifically instructed the jury:

[Nelson's] damages, if any, should not include any loss which he could have avoided or prevented by reasonable effort to obtain other land to replace ... [Smith's] land....

The jury evidently believed Nelson's assertion that other lands leased in 1981–1982 were not replacement lands. It could reach that conclusion on the evidence before it.

## V

### Jury Influence

■ Smith claims he was deprived of a fair trial because his attorney's firm had represented the wife of the jury foreman in a prior divorce proceeding. This is not a timely objection. The matter came out on voir dire and no challenge for cause or pre-emptory strike surfaced. In fact, if the foreman had been challenged for cause because of the attorney-client relationship between his former wife and Smith's counsel,

it is doubtful whether that would have even constituted implied bias for a successful challenge for cause. *Schoeb v. Cowles*, 279 Minn. 331, 156 N.W.2d 895 (1968). In any event, the challenge is now somewhat late.

## DECISION

There was sufficient evidence for a jury to find an oral agreement between Smith and Nelson to lease farmland at a rental rate based on reasonable rates charged in the general area to be farmed. Smith was estopped by his conduct from invoking the Statute of Frauds.

Affirmed.