**FARMERS STATE BANK OF
DELAVAN, Respondent,**

v.

**Mildred JENKINS and Larry
Jenkins, Appellants.**

No. CO–86–2084.

Court of Appeals of Minnesota.

April 14, 1987.

Richard D. Berens, Johnson, Berens & Wilson, Fairmont, for respondent.

Charles K. Frundt, Frundt, Frundt, Johnson & Roverud, Ltd., Blue Earth, for appellants.

Heard, considered and decided by LESLIE, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellants Mildred Jenkins and Larry Jenkins appeal from entry of summary judgment determining that their security interest in certain farm equipment is second in priority to that of respondent Farmers State Bank of Delavan. Appellants argue that the trial court erred in granting summary judgment where a genuine issue of material fact remains to be resolved regarding mistaken release of their security interest. We affirm.

## FACTS

On April 4 and 10, 1975, William Howard Jenkins and Mildred Jenkins sold their interest in certain farm equipment to their son Mark Jenkins.[1] A financing statement was filed on April 22, 1975, and subsequently continued in 1980 and 1985. Mark Jenkins borrowed money from Farmers State Bank of Delavan (the Bank) on April 15, 1975, using the farm equipment as collateral. The Bank filed a financing statement on August 5, 1975. The statement expired, and a new statement was filed on May 14, 1980. The Bank acknowledges that its security interest was second in

priority to that of William Howard Jenkins and Mildred Jenkins.

Mark Jenkins experienced financial problems in 1980. On August 6, 1980, he transferred his interest in the equipment to his brother Larry Jenkins. As part of the family transaction, Larry Jenkins entered into a security agreement with his parents, obligating himself to pay them for the equipment, and Mark Jenkins gave his parents a promissory note for unpaid interest. The bill of sale contained the following release from William Howard Jenkins and Mildred Jenkins:

> That Wm. Howard Jenkins and Mildred Jenkins, husband and wife, hereby acknowledge that they have a security interest in the above mentioned items of personal property as evidenced by a Financing Statement on file with the Faribault County Recorder as Number 30467 and filed April 22, 1975. Furthermore, Wm. Howard Jenkins and Mildred Jenkins hereby consent to the transfer of said property from Mark Jenkins and Janelle Jenkins to Larry Jenkins and absolutely release said items of personal property from any encumbrance they may have on the property.

Mark Jenkins subsequently filed a bankruptcy petition, and his debts have been discharged. William Howard Jenkins is now deceased.

The Bank commenced this action to determine the priority of security interests in the farm equipment. The trial court reasoned that William Howard Jenkins and Mildred Jenkins had released their interest and that the debt owed by Mark Jenkins to his parents had been satisfied in the transaction transferring the equipment to Larry Jenkins. The court acknowledged appellants' claim that the release was the product of a mutual mistake and, if the parties had known that the release would have advanced the Bank's priority, they would not have entered into the release. How-

---

1. In a motion for amended findings, appellants contend that Mark Jenkins obtained an undivided one-half interest in the equipment and that the other half interest was owned by Larry Jenkins. The trial court reserved that issue for trial, apparently a trial to be held when the Bank takes action on its security interest. It does not appear that the extent of Mark Jenkins' interest is material to a determination of priorities, and the parties do not address the issue on appeal.

ever, the court declined to set aside the release on the basis of mutual mistake and concluded that the Bank moved from second priority to first priority as a result of the release.

## ISSUE

Is there a genuine issue of material fact regarding a mutual mistake leading to release of Mildred Jenkins' security interest?

## ANALYSIS

A grant of summary judgment is proper "when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law." *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982); Minn.R.Civ.P. 56.03. All doubts and factual inferences must be resolved against the moving party, and it is not the trial court's function to decide issues of fact but only to determine whether there is an issue of fact to be tried. *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn. 1981). Facts must be viewed in the light most favorable to the non-moving party. *Ostendorf v. Kenyon*, 347 N.W.2d 834, 836 (Minn.Ct.App.1984) (citing *Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 531, 134 N.W.2d 892, 897 (1965)). On appeal, this court must view the evidence most favorably to the one against whom the motion for summary judgment was granted. *Grondahl*, 318 N.W.2d at 242.

In responding to the motion for summary judgment, appellants argued to the trial court:

[I]t's our position that there was a mistake of the Jenkins that took place when they entered into that transaction [releasing the security interest]. What they did was they found out that Mark Jenkins was having financial problems, and he owed this money to their mother and dad for the purchase of the property, so Larry Jenkins agreed to help out on the property * * * by taking over that portion of the debt, and because they were unaware of the outstanding security of the bank, instead of just having him as-

sume the debt and agree to pay it and leave the security in place, they released the security on that property and made a new security agreement and filed it with Larry Jenkins because he was now the owner of the property. Had they been aware of the bank's security interest, that wouldn't have been done.

The Bank explained to the trial court:

We feel that we are entitled to an order for summary judgment even assuming that the position taken by the [appellants] is true, and for the purpose of this presentation I believe that we would have to assume their allegation is true.

The trial court concluded that:

By reason of the release by the [appellants] of their security interests; and, by reason of the satisfaction of the debt for which the * * * machinery was given as security, [respondent], Farmers State Bank of Delavan, has a priority over [appellants] Mildred Jenkins and Larry Jenkins in [its] lien against * * * farm machinery hereinbefore listed.

In its findings, the trial court acknowledged appellants' argument regarding mistake in entering into the release but apparently accepted the Bank's position that, even if it is assumed that a mistake prompted the release, that fact would not result in setting aside the release.

On appeal, the parties agree that if the release is effective, the Bank moves from second priority to first. For the purposes of reviewing the summary judgment, it must be assumed that facts exist to show that William Howard Jenkins and Mildred Jenkins were mistaken as to the existence of the Bank's security interest and the resulting effect of the release of their interest. The question which remains is whether a mistake by the parties to the release of a security interest is material to a determination of the priority of a security interest held by a third party.

█ If the mistake involved both parties to this action, it would be within the court's discretion to exercise its equitable powers to set aside the release. *See Doud v. Minneapolis Street Railway Co.*, 259 Minn.

341, 107 N.W.2d 521 (1961); *Elsen v. State Farmers Mutual Insurance Co.*, 219 Minn. 315, 17 N.W.2d 652 (1945); and *Hines v. Bauer*, 158 Minn. 298, 197 N.W. 483 (1924). These cases, cited by appellants, involve a mutual mistake in a transaction or release involving only the parties to the action. That is not the case here, where the Bank was not a party to the mistake leading to release of the first priority security interest. The mistake leading to the release was made by members of the Jenkins family.

■ Similarly, if the mistake at issue here lead to further transactions based upon that mistake, the court's equitable powers could be exercised to set aside the release. *See Peterson v. First National Bank of Ceylon*, 162 Minn. 369, 203 N.W. 53 (1925) and *Benson v. Markoe*, 37 Minn. 30, 33 N.W. 38 (1887). Both of these cases, relied upon by appellants, involve chain of title issues where knowledge of the mistake was the basis for further actions to take unconscionable advantage of the mistake. Again, that is not the case here. The Bank took no action based upon the release but rather seeks to determine the effect of the release upon its security interest. Also, the Bank did not have knowledge of the release until after this action was commenced.

■ The *Peterson* decision, an early recognition that a contract may be set aside on the basis of a mistake of either fact or law, outlined the equitable concepts leading to the conclusion that a contract should be rescinded:

The controlling equities of this case are these: (1) A blameless plaintiff fallen into serious error, whether of fact or law is immaterial, which promises a disastrous result, wholly unintended by any of the parties to the transaction wherein the mistake occurred; (2) absence of negligence of the person seeking relief; (3) defendants with knowledge of the mistake attempting to secure by inequitable conduct an unconscionable advantage of plaintiff and to enrich themselves unjustly at his expense; (4) the ability of the

court to restore the status quo as to all of the interests involved.

*Peterson*, 162 Minn. at 379, 203 N.W. at 56–57. The *Peterson* case is clearly distinguishable. Mark Jenkins had pledged to the Bank as collateral the same farm equipment in which his parents had a security interest. He apparently did not inform his parents of that pledging, either in 1975 or in 1980 when Mildred and William Howard Jenkins released their security interest. Members of the Jenkins family were negligent in failing to determine what other security interests may have been involved—and recorded—prior to entering into the release. The Bank did not have knowledge of the mistake on the part of the Jenkins family and has not engaged in inequitable conduct to secure an unconscionable advantage. Finally, the ability of the court to restore the status quo is influenced by the fact that Mark Jenkins' debts have been discharged in bankruptcy and it is impossible to return to pre-bankruptcy conditions.

■ Appellants argue that the Bank would not be prejudiced if the release were set aside because it would be in a second priority position, precisely the same position it would have been in had the release not been executed. They contend that, because no prejudice would result, the release should be rescinded. We do not agree that rescission would be without prejudice to the Bank. As a result of the release, the Bank moves from second to first priority. Rescinding the release would move the Bank from first to second priority, which is clearly prejudicial.

Perhaps the most important implication of the *Peterson* decision is its recognition of the rights of third parties. The *Peterson* court observed in allowing rescission that "[t]he need for settlement and finality is present but not so urgent in transactions of private concern." *Id.* at 374, 203 N.W. at 55. Here, the transaction is not merely of private concern; the release affects the rights of a third party who also holds a security interest in the property. There is a need for a final resolution of the rights of the parties to the release in order to deter-

mine the rights of others based upon the effect of that release.

The equities that may influence the rescission of a contract between parties based upon a mistake are not present in a transaction affecting the rights of others. That is particularly so where the third party has taken no inequitable action to realize an unconscionable action based upon the mistake. The third party, in this case the Bank, has a right to rely on the finality of the release of a security interest when it was not a party to a mistake influencing the decision to enter into the release and when it has not attempted to take unconscionable advantage of the mistake. As a result, the trial court properly determined that the issue of mistake was not material to a determination of the priority of security interests between the parties to this action. Disposition through summary judgment was proper.

■ We also note that a consideration of the statutes governing recording of security interests, Minn.Stat. § 336.9–401, et seq., requires affirmance of the trial court's decision. When the security interest agreement with Larry Jenkins was being arranged, the Bank's interest was properly recorded and provided constructive notice to the Jenkins family. *See Lawin v. Pepe*, 231 Minn. 561, 563, 43 N.W.2d 804, 806 (1950). The notice was sufficient to indicate that a subsequently acquired interest would be lower in priority than that of the Bank and to put the Jenkins family on notice to inquire. The failure to inquire and the resulting lack of knowledge of the Bank's interest cannot be considered a mistake on the part of the Jenkins family. *See Grant v. Bibb*, 129 Minn. 312, 315, 152 N.W. 728, 729 (1915). Consequently, the effect of the recording statutes precludes arguing that mistake is an issue in this action.

### DECISION

The trial court did not err in granting summary judgment where the issue of a mistake in releasing a security interest was not material to a subsequent determination of priority of interests.

Affirmed.