**James H. MANDERFELD, Respondent,**

v.

**Frances KROVITZ, Appellant.**

**No. C0–95–858.**

Court of Appeals of Minnesota.

Nov. 14, 1995.

Review Denied Jan. 25, 1996.

Larry M. Nord, Duluth, for respondent.

A. Blake MacDonald, MacDonald & Downs, Duluth, for appellant.

Considered and decided by PARKER, P.J., and LANSING and FOLEY, JJ.*

## OPINION

PARKER, Judge.

The trial court ordered reformation of an option contract based upon jury findings of fraud and mutual mistake. The contract was reformed by adding the name of a party's spouse/joint tenant despite the fact that she was not a party to the agreement and never consented to it. We reverse.

## FACTS

In April 1983, James Manderfeld and Sam Krovitz executed an option agreement regarding commercial property that Krovitz was planning to acquire and Manderfeld was planning to lease. Unknown to Mr. Manderfeld, Sam Krovitz and his wife, Frances, acquired the property as joint tenants in May 1983. Approximately two weeks later, without Mrs. Krovitz's knowledge or consent, Mr. Manderfeld and Mr. Krovitz executed a second option agreement regarding the property. That option agreement provided that Manderfeld could purchase the property at the end of his ten-year lease, which was to expire in 1993. The agreement included a purchase price that appears to be far below the property's 1993 fair market value. Over the ten-year period of his lease, Manderfeld claims to have paid substantial amounts in rent, taxes, insurance and improvements made to the property.

Mrs. Krovitz became aware of Manderfeld's option agreement sometime in 1986. She retained an attorney, who informed her that the option agreement, which lacked her

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

signature, was invalid. Sometime in 1989, after the death of Mr. Krovitz, Manderfeld attempted an early exercise of his option to purchase the property. At that time, he learned that Mrs. Krovitz did not intend to honor his attempt to exercise the option. In 1993, at the end of the ten-year lease, Manderfeld tendered the purchase price of $200,-000 to Mrs. Krovitz. She refused to accept on the grounds that she was not a party to the option contract and did not believe that it was valid.

Manderfeld subsequently sued Frances Krovitz and the deceased Sam Krovitz for specific performance of the option contract. A jury found that Mrs. Krovitz's name was not included in the option contract due to both a "mutual mistake" and "fraud or inequitable conduct." Accordingly, the trial court reformed the contract to add Mrs. Frances Krovitz's name.

### ISSUE

Was it error for the trial court to reform an option contract by adding the name of a party's spouse/joint tenant despite the fact that she was not a party to the agreement and had no knowledge of the agreement when it was made?

### DISCUSSION

#### I. Reformation of Written Instruments

 The principles of law regarding reformation of a written instrument are clear and well established:

A written instrument can be reformed by a court if the following elements are proved: (1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party. * * * These facts must be established by evidence which is clear and consistent, unequivocal and convincing.

*Nichols v. Shelard National Bank,* 294 N.W.2d 730, 734 (Minn.1980) (citing *Theros v. Phillips,* 256 N.W.2d 852, 857 (Minn.1977); *Fritz v. Fritz,* 94 Minn. 264, 102 N.W. 705 (1905)). *See also Berg v. Carlstrom,* 347 N.W.2d 809, 812 (Minn.1984); *Theisen's, Inc. v. Red Owl Stores, Inc.,* 309 Minn. 60, 243 N.W.2d 145 (1976); *Gartner v. Gartner,* 246 Minn. 319, 321, 74 N.W.2d 809, 812 (1956); *Kleis v. Johnson,* 354 N.W.2d 609, 611 (Minn. App.1984).

 Manderfeld argues that reformation to add Mrs. Krovitz's name is proper in this case because her name was omitted by a mutual mistake of the parties, or by a unilateral mistake of one party accompanied by fraud of the other party. But Manderfeld's argument ignores the first element of reformation:

The important point is that there was in fact a valid agreement between the parties and not that the contract as drawn was valid.

*Gartner,* 246 Minn. at 322, 74 N.W.2d at 812. Reformation is generally allowed against the *original* parties to an instrument and those in privity with the original parties. *See* 76 C.J.S. *Reformation of Instruments* § 54 (1994); *Wehner v. Schroeder,* 354 N.W.2d 674 (N.D.1984). The rule gives way, however, to the intervening rights of persons not parties to the contract. *See id.; Rogers v. Louisiana Power & Light Co.,* 391 So.2d 30, 32 (La.Ct.App.1980); *Gatton v. Page,* 44 Ill. App.3d 559, 3 Ill.Dec. 287, 289, 358 N.E.2d 685, 687 (1976) ("the courts will not grant relief against mistakes so as to affect the intervening rights of third parties").

 Manderfeld stresses repeatedly that there was a valid agreement between the parties, a meeting of the minds. Indeed, the jury found that "there was a valid option agreement." The problem, however, is that the special verdict form did not specify the parties to the "valid option agreement." It appears that due to ambiguous instructions and an ambiguous special verdict form, the jury erroneously believed that the agreement could be valid without Frances Krovitz's consent.[1] All evidence in the record indicates

---

1. Mrs. Krovitz specifically asked the judge to instruct the jury:

[U]nless you find, from the greater weight of the evidence, that the Defendant, Frances Kro-

that when the agreement was made, the only "parties" to the contract were Sam Krovitz and James Manderfeld. Thus, the jury's finding of a valid option agreement must be set aside.

 If James Manderfeld and Sam Krovitz made an option contract for the sale of land, neither having the authority to bind Frances Krovitz to it, a court cannot subsequently bind her to the contract due to the "mistake" of the contracting parties in failing to obtain her consent. Manderfeld does not cite authority to bind Mrs. Krovitz to a contract to which she was not a party, was not aware of at the time of its making, and to which she has not been shown to have consented. It has long been the law that a person may not be compelled to enter into a contract with one whom she never intended to deal with. *Elder v. Elwell*, 175 Minn. 144, 149, 220 N.W. 415, 417 (1928); *Everson v. J.L. Owens Mfg. Co.*, 145 Minn. 199, 202–03, 176 N.W. 505, 507 (1920).

Manderfeld cites a Minnesota Supreme Court case in which the court reformed a contract by adding the name of one of the parties to the agreement:

> [T]he parties through a mutual mistake failed to comply with the legal requirements for a valid easement. While La-Grow Development Company officers and the Tschol brothers agreed to grant Rankin an easement, the deed did not contain the proper grantor: LaGrow Development Company. This is exactly the type of mistake that reformation exists to remedy.

*Berg v. Carlstrom*, 347 N.W.2d at 812 (citing *Myers v. Town of Milton*, 148 W.Va. 789, 137 S.E.2d 441 (1964)). It is of crucial significance, however, that in *Berg*, the grantor, whose name was added to the contract, was in fact a party to the original agreement.

There is no evidence in this record that Frances Krovitz ever agreed to the option contract; all of the evidence is to the contrary.

 Manderfeld characterizes the absence of Mrs. Krovitz's name as a mere "scrivener's error." We think, however, that when two parties enter into an agreement, but neglect to obtain the consent of a necessary third party, there is more afoot than a simple failure of the written instrument "to express the real intentions of the parties." *Nichols*, 294 N.W.2d at 734. Regardless, such a "mistake" in this case is fatal to Manderfeld's option agreement because it is not the sort of mistake contemplated by the doctrine of reformation. Furthermore, principles of due process preclude a court from correcting the "mistake" of Sam Krovitz and James Manderfeld by compelling Frances Krovitz, a stranger to the agreement, to surrender her rights in the property.

 We note, too, that although James Manderfeld may have been mistaken as to the validity of his option agreement, he could easily have been disabused of his mistaken belief had he simply checked to see who the record owners of this registered property were. Indeed, a primary reason that we have recording statutes is to avoid mistakes such as the one made by Manderfeld in this case. Under Minn.Stat. § 507.32 (1994), "a purchaser is charged as a matter of law with constructive notice of any properly recorded instrument." *Anderson v. Graham Inv. Co.*, 263 N.W.2d 382, 384 (Minn.1978) (citing *Latourell v. Hobart*, 135 Minn. 109, 113, 160 N.W. 259, 260 (1916); *Smith v. Lockwood*, 100 Minn. 221, 110 N.W. 980 (1907)).

The jury did find that the failure of the written instrument to include the signature of Frances Krovitz was "due to a mutual mistake of James Manderfeld and Frances

---

vitz, executed an agreement in writing with the Plaintiff for the conveyance of the subject real estate, or that the Defendant Frances Krovitz, through an agent authorized in writing, executed an agreement with the Plaintiff for the conveyance of the property, you may not find that the Plaintiff acquired any interest in the property of the Defendant Frances Krovitz by entering into the option agreement.

Instead of providing the jury with the above language, the judge merely instructed the jury

that a conveyance of an interest in land must be in writing subscribed by the parties or their lawful agent. In this case, however, the term "party" was never defined and was often used ambiguously. It was usually unclear as to who the "parties" were and whether the term referred to parties to the option agreement or parties to the lawsuit. We are convinced that confusion over the term "parties" as it was used in this case may have been a contributing factor to the jury's erroneous verdict.

Krovitz" and "due to fraud or inequitable conduct on the part of Frances Krovitz." As the above discussion suggests, however, the evidence does not support either of these findings. There is no evidence that Mrs. Krovitz even knew about the agreement until three years after the contract had been signed. At that time, her attorney informed her that the agreement, which lacked her signature, was invalid. Rather than proving mistake or fraud on the part of Mrs. Krovitz, the evidence is that she was initially unaware of the agreement and, once aware, had no intention of being a party to it. Moreover, Minnesota's recording statute, Minn.Stat. § 507.32, precludes Manderfeld's argument that he was mistaken or defrauded. *See Farmers State Bank of Delavan v. Jenkins,* 403 N.W.2d 861, 865 (Minn.App.1987) ("the effect of the recording statutes precludes arguing that mistake is an issue in this action"). The jury's findings of fraud and mistake, therefore, must be set aside both as a matter of law and because the evidence does not support them.

 Although the above analysis is dispositive of this case, we feel compelled to respond to the arguments made by the parties regarding the applicability of Minn.Stat. §§ 519.02 and 519.06 (1994).[2] It is conceivable that the jury imputed knowledge of the option contract to Frances Krovitz due to a misapprehension of Minn.Stat. § 519.06 (1994). The statute provides, in relevant part:

> In all cases where the rights of creditors or purchasers in good faith come in question, each spouse shall be held to have notice of the contracts and debts of the other as fully as if a party thereto.

*Id.* Such imputed knowledge, however, in the case of real property is not enough in itself to bind one spouse to the contract of another. It is well settled that, under Minnesota law, a husband may not dispose of his wife's real property without her consent. Minn.Stat. § 519.02 provides:

> [A]ny married woman, during coverture, may receive, acquire, and enjoy property of every description, and the rents, issues, and profits thereof, and all avails of her contracts and industry, free from control of her husband, and from any liability on account of his debts, as fully as if she were unmarried.

In *Dvorak v. Maring,* the Minnesota Supreme Court held that a wife's endorsement of an earnest-money check did not constitute ratification of her husband's contract for the sale of the homestead because

> Minn.Stat. § 519.06 (1978) * * *, which precludes one spouse from acting as agent for the other in the sale of real estate, prevents a spouse from ratifying a land sale contract signed by the other spouse, since the spouse cannot ratify an act he or she could not have originally authorized.

*Dvorak,* 285 N.W.2d 675, 677 (Minn.1979) (footnote omitted).[3]

 In *Betcher v. Rinehart,* 106 Minn. 380, 118 N.W. 1026 (Minn.1908), a factually similar case, the plaintiff wife owned and leased property to the defendant. When the defendant defaulted on monthly lease payments, wife brought an unlawful detainer action. *Id.,* 118 N.W. at 1026. The defendant claimed that such an action could not be brought against her because she was occupying the premises under a contract for purchase and not a lease. *Id.* She claimed that wife's husband, with whom she had made the

**2.** We note also that because Mr. and Mrs. Krovitz held the property in joint tenancy, the law of joint tenancy has some application to this case. *See* Minn.Stat. § 500.19, subd. 1 (1994). However, the trial court did not rely upon joint tenancy law in making its order, and the parties chose not to rely upon it for purposes of this appeal. We therefore mention it only in passing.

**3.** Although unpublished decisions by this court have no precedential force and may be cited only for their persuasive value, *see Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 800 (Minn.App.1993),

we note that a recent unpublished decision by this court is consistent with our decision today. *See Carmody v. Noon,* No. C3–94–1041, 1994 WL 694974 (Minn.App. Dec.13, 1994) (citing *Keystone Iron Co. v. Logan,* 55 Minn. 537, 540–41, 57 N.W. 156, 156–57 (1893)) (recognizing that "[a] contract for the sale of one spouse's interest in land purportedly made by the other spouse acting as an agent is absolutely void and cannot be enforced against the owner-spouse"). We further note that although Minn.Stat. § 519.06 now provides an exception, neither party has argued that the exception applies to this case.

contract, and whom she had supposed to be the owner, agreed that her monthly payments would be applied to the purchase price of the premises. *Id.* She also maintained that she was deceived and defrauded by husband, led to believe that she would receive a contract of purchase, and induced thereby to enter into the lease and take possession of the property. *Id.* The Minnesota Supreme Court held that regardless of whatever contract had been made with respect to the property, it was void under the statute of frauds because it was oral, and it was also prohibited by statute because the agreement was made by a husband for the sale of his wife's property. *Id.* Thus, it is clear that in addition to the fact that reformation is inappropriate under the facts of this case, there has long been a statutory bar against the contract which Manderfeld seeks to validate.

In its concluding remarks, the *Betcher* court stated:

> The trial court * * * properly ordered judgment for plaintiff notwithstanding the verdict, unless the evidence was such as to estop her from disputing the alleged contract. We find no evidence in the record to support either a waiver, ratification or estoppel, conceding for the moment that the doctrine of estoppel or waiver would apply to a case of this kind.

*Id.* at 1026–27. Even had this case been submitted to the jury under an estoppel theory, the evidence in the record before us would not have supported a verdict in favor of Manderfeld because, as the *Dvorak* court pointed out, in such cases where a claim of estoppel has successfully been made,

> the finding of estoppel resulted from the nonsigning spouse's *consent and full knowledge of the transaction,* retention of benefits, and delivery of possession to the grantee, who typically took possession and made valuable improvements.

4. We note that in his brief, Manderfeld makes the argument that his second option agreement with Sam Krovitz relates back to their first agreement, which predates Frances Krovitz's acquisition of the property. Accordingly, Manderfeld argues, Frances Krovitz acquired an interest in the property subject to the option agreement. But this argument flies in the face of the explicit language of the second option agreement: "Whereas, the

*Dvorak,* 285 N.W.2d at 678 (emphasis added). The record in this case does not support a finding that Frances Krovitz ever consented to this option agreement.[4]

As the above analysis demonstrates, the trial court erred when he denied Frances Krovitz's motions for summary judgment, directed verdict, and judgment notwithstanding the verdict.

## II. Jurisdiction over Sam Krovitz

Manderfeld quotes the following from a Minnesota case in support of the trial court's exercise of jurisdiction over Sam Krovitz:

> The fact that the named Defendant in the Summons was dead when the action commenced did not prevent the Court from acquiring jurisdiction to determine the rights of other persons or parties unknown, claiming an interest in the land described in the Lis Pendens.

*McClymond v. Noble,* 84 Minn. 329, 87 N.W. 838 (1901) (citing *Inglee v. Welles,* 53 Minn. 197, 55 N.W. 117 (1893)). The *McClymond* court, however, does not suggest that it has jurisdiction over the deceased but, rather, that it has jurisdiction to determine the rights of those claiming an interest in the land. This case, however, was *not* an action to determine adverse claims to land.

■ Lawsuits against deceased persons must name the estate or personal representative rather than the deceased in his or her individual capacity. The Minnesota Supreme Court has said that under common and statutory law,

> an action abates against a person individually after his death, and survives, if at all, only against his personal representative or estate.

*Zahler v. Manning,* 295 N.W.2d 511, 513 n. 2 (Minn.1980) (citing Minn.Stat. § 573.01 (1978); 22 Am.Jur.2d Death § 1 (1965)). Thus, no court in this state maintains juris-

parties have now determined that the option agreement of April 1, 1983, is of no further force and effect * * *." This language notwithstanding, we are still not convinced that Manderfeld's argument is legally sound. Nonetheless, we decline to address it because it was not raised at trial. *See Thiele v. Stich,* 425 N.W.2d 580, 582–83 (Minn.1988).

diction over Sam Krovitz. More to the point, retention of Sam Krovitz's name in this case may have been highly prejudicial to Frances Krovitz because the jury could well have been misled to believe that Frances Krovitz and Sam Krovitz were one and the same for purposes of this lawsuit, and we have already adverted to the prejudicial effect of possible confusion over use of the term "party."

### III. Improper Admission of Evidence

 Frances Krovitz also alleges that the trial court erred in allowing James Manderfeld to testify to oral statements and agreements between himself and Sam Krovitz. In light of our above analysis, it may be unnecessary to address this issue. We do so, however, because Mrs. Krovitz properly objected to the evidence at trial and was prejudiced by the court's ruling on admissibility.

In support of the trial court's admission of this evidence, Manderfeld cites Minn. R. Evid. 617, which provides:

A witness is not precluded from giving evidence of or concerning any conversations with, or admissions of a deceased or insane party or person merely because the witness is a party to the action or a person interested in the event thereof.

As the comment to the rule indicates, this rule supersedes Minnesota's "Dead Man Statute." It does not, however, supersede all other rules of evidence prohibiting admission of such testimony on other grounds.

 Manderfeld claims that the oral statements by Sam Krovitz were admissible under the "statement against interest" exception to the hearsay rule. Minn. R. Evid. 804(b)(3). We note, however, that a statement against interest must be against interest at the time it is made. *See id.* Manderfeld asserts that this litigation is evidence of the fact that the oral statements by Sam Krovitz were against his interest. But although Sam Krovitz's statements might later have subjected him to civil liability, had he lived, it is not clear that, at the time the statements were made, they were "so far contrary to [his] pecuniary or proprietary interests" as to require admission under the applicable exception to the hearsay rule. *Id.*

Regardless, a substantial part of the testimony regarding Manderfeld's conversations with Sam Krovitz, especially the statements concerning the lease payments as partial purchase payments, was inadmissible both under the statute of frauds and the parol evidence rule. The trial court erred in admitting this evidence over objection; this evidence was deeply prejudicial to Frances Krovitz.

### IV. Jury Instructions

 Trial courts are allowed considerable latitude in selecting jury instructions. *Alholm v. Wilt,* 394 N.W.2d 488, 490 (Minn. 1986) (citing *Cameron v. Evans,* 241 Minn. 200, 208, 62 N.W.2d 793, 798 (1954)). An appellate court will not reverse a district court's decision unless the instructions constituted an abuse of discretion. *Id.* "It is unnecessary that every possible opportunity for misapprehension be guarded against." *Seivert v. Bass,* 288 Minn. 457, 181 N.W.2d 888, 894 (1970).

 Mrs. Krovitz argues that the jury instructions were erroneous because they did not include the elements for reformation of a contract and because they instructed the jury using the wrong standard of proof. Contrary to Manderfeld's contention that Mrs. Krovitz was required to object before the jury retired, she made a timely assignment of error in her motion for a new trial:

An error in the instructions with respect to fundamental law or controlling principle may be assigned in a motion for a new trial although it was not otherwise called to the attention of the court.

Minn. R. Civ. P. 51.

 Mrs. Krovitz argues that it was error not to instruct the jury that the existence of a contract between Frances Krovitz and James Manderfeld was a necessary requirement for reformation. In light of our above analysis, we agree (see footnote 1). Mrs. Krovitz also objected to instructing the jury that Manderfeld had the burden of proving mutual mistake by a "fair preponderance" of the evidence. This court has held:

A party seeking reformation of a contract has an "onerous" burden of proof. Where reformation is based upon mutual mistake,

as it is here * * * the evidence "must be clear, precise, and convincing."

*Wood Goods Galore, Inc. v. Reinsurance Ass'n of Minnesota,* 478 N.W.2d 205, 209 (Minn.App.1991), *review denied* (Minn. Jan. 30, 1992) (quoting *Tollefson v. American Family Ins. Co.,* 302 Minn. 1, 7, 226 N.W.2d 280, 284 (1974)). The trial court plainly erred in requiring clear and convincing evidence *only* for the element of fraud or inequitable conduct, which is merely one alternative element of reformation. In a reformation case, all elements must be proved by clear and convincing evidence. *Id.*

Finally, we note that the instruction on the element of mistake was potentially misleading:

> The Plaintiff is alleging that there is a mutual mistake as Frances Krovitz is not a party to the agreement. Plaintiff is seeking to reform that option contract to include the name of Frances Krovitz.

> * * *

> The mistake by one party and the knowledge of the mistake by another party will justify relief as mutual mistake.

If Frances Krovitz was not a party to the agreement, the mistake could not have been hers. The above instruction may also have led the jury to believe erroneously that relief could be granted based upon Frances Krovitz's knowledge of the option contract, which she discovered in 1986.

### V. In–Chambers Agreement

Finally, in the trial court's memorandum denying Krovitz's motion for judgment notwithstanding the verdict, the judge refers to an "in-chambers" agreement:

> After the instructions were given by the Court, defense counsel did approach the side bar and asked about the reformation instruction and once again the Court reiterated that [in] in-chambers conference previous to this matter it was decided that the instruction should not be given pursuant to Defendant's objections. Once again the Court pointed out that it had been agreed that if the jury answered either

Question 2 or 3 in the affirmative, that the contract would be reformed.

Because this agreement was not recorded and in the transcript, this court has no basis for assessing whether the agreement may be of some force or effect as "the law of the case." We note, however, that it appears to us that counsel for Mrs. Krovitz maintained all along that this case was not appropriate for reformation. The fact that counsel may have agreed to certain procedural aspects of the case does not mean that Mrs. Krovitz waived her right to object to the legal theory under which this case was submitted to the jury.

### DECISION

The trial court erred in granting reformation of the option contract. Frances Krovitz cannot be bound by an unauthorized agreement made solely by her husband regarding property that she and her husband owned as joint tenants. When Sam Krovitz died, Frances Krovitz, as the surviving joint tenant, took title to the property free and clear of her husband's liabilities or contracts. The jury's verdict is set aside in its entirety. The trial court's judgment is reversed, and the case must be dismissed.

**Reversed.**