## SECURITY INSURANCE COMPANY OF HARTFORD v. KAYE MILLING SUPPLY, INC. AND ANOTHER.

211 N. W. 2d 519.

October 12, 1973—No. 43450.

*Popham, Haik, Schnobrich, Kaufman & Doty* and *G. Marc Whitehead,* for appellant.

*Hoversten, Strom, Ryan & Lanoue, Kenneth Strom, Lindquist & Vennum,* and *Robert J. Sheran,* for respondent Kaye Milling Supply, Inc.

*Baudler & Baudler* and *William J. Baudler,* for respondent Prairie Farm Service, Inc.

Heard before Knutson, C. J., and Otis, Todd, and MacLaughlin, JJ., and considered and decided en banc.

OTIS, JUSTICE.

These proceedings arise out of a claim for damages brought by the owner against a building contractor who was enlarging and modernizing a grain storage bin which collapsed when it was filled with wet soybeans. The contractor's liability carrier seeks a declaratory judgment holding that the damage resulted from a "completed operations hazard," and that coverage is therefore expressly excluded by the terms of its policy. The district court heard the case without a jury and held that the exclusion did not apply. We reverse.

Prairie Farm Service, Inc. (Prairie) operates a grain storage and drying facility in Blooming Prairie, Minnesota. In May 1969, Prairie contracted with Kaye Milling Supply, Inc. (Kaye) for construction of facilities which would enlarge and improve Prairie's operation. At the time work was begun, Kaye was covered by a contractor's liability policy written by Security Insurance Company of Hartford (SIC), which policy is the subject of this litigation.

The issues are (1) whether, by the storage of beans in the bin which collapsed before construction was actually completed, Kaye is excluded from coverage with respect to Prairie's claim under the "completed operations" provisions of the policy; and (2) whether the liability carrier is estopped from asserting the exclusion because of the time which elapsed before it denied coverage.

The pertinent language of the exclusion is as follows:

"It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard."

The policy goes on to define "completed operations hazard" in this manner:

"* * * Operations shall be deemed completed at the earliest of the following times:

\* \* \* \* \*

"(3)  when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project."

The action brought by Prairie against Kaye has not been tried pending the disposition of the coverage issue. Consequently, there has not been an exhaustive presentation of the facts surrounding the accident. For purposes of this litigation the parties assume as facts matters which are not in dispute.

Prairie is in the business of purchasing grain from farmers in small quantities which it dries, stores, and sells in larger quantities. Before construction began, grain was unloaded in a pit and elevated to a point from which it was distributed by gravity to holding bins and then conveyed to dryers by horizontal augers. After being dried, the grain was returned to the storage bins. The bins and dryers were originally at ground level. One of the purposes of the construction was to place two holding bins above the dryers in order to empty them by gravity. The new elevated bins were held in place and supported by towers with four legs.

On the morning of October 24, 1969, a shipment of wet or "hot" soybeans was brought to the plant. It required drying to

prevent spoilage. Prairie thereupon sought and secured permission from Kaye to process the beans in the newly constructed north dryer. The south bin and dryer had already been in use some 10 days. Within half an hour of the time the north bin was filled, one of the legs supporting the tower collapsed, dropping the tower, bin, and dryer to the ground, resulting in extensive damage to the entire plant. The evidence does not establish the precise reason for the collapse of the tower. The parties agree that for purposes of this litigation it is not an issue. Nevertheless, they all assume, for obvious reasons, that the direct and immediate cause of the collapse was the stress created by filling the bin with several tons of soybeans.

■ The trial court, without an accompanying memorandum or further elaboration, made the following finding in construing the policy:

"That the accident referred to in paragraph 3 of these Findings occurred during the course of the construction work undertaken by Defendant, Kaye Milling Supply, Inc., under contract referred to in paragraph 2 of these Findings, and was not excluded from coverage under the completed operations exclusion contained in the policy issued by Plaintiff herein."

Defendants Kaye and Prairie argue that under the facts and under the law the construction undertaken by Kaye was not a "completed operation" at the time the accident happened, and consequently the exclusion does not apply. They stress the fact that much remained to be done before the work was finished. Supporting cables to hold the bins in position had not been made secure; corner posts had not been bolted to the concrete base; cross bracing had not been completed; and a number of other attachments remained to be added, amounting to some 450 man-hours of work. Defendants take the position that the language of the policy which deems operations to be completed when the "portion of the work out of which the injury or damage arises

has been put to its intended use" has no bearing in the context of this case. They point out that the parties intended the operation of the plant to continue during the construction period. Because it is an integrated plant, it is defendants' contention that no portion of the work has been put to its intended use until the entire plant has been put to such use. As an example of what the policy means, Prairie cites a contract to build three houses, upon the completion and occupancy of any one of which the exclusion would apply to that portion of the work. Here, it is argued, the erection of the towers and bins was not a segregated operation but rather a phase of the entire project. Unless such a phase can be segregated and completed, the exclusion has no application according to the defendants. They concede only that had the structure which held the bins been completed, the exclusion would be effective. In summary, they assert that the "intended use" test is only one indication of completion but does not, standing alone, constitute an exclusion. Finally, it is argued that the liability of Kaye may be predicated on its permitting the north bin to be used for the bin's intended purpose at a time when it was structurally incomplete and not ready for the operation for which it was ultimately to be utilized.

SIC points out that this appears to be the first reported case dealing with the language contained in paragraph (3) of the "completed operations" exclusion. All of the litigation which has heretofore stemmed from the exclusion was directed at determining the point at which the entire contract was completed. The present language was adopted in October 1966. The change was made in response to such decisions as Heyward v. American Cas. Co. of Reading, Pa. 129 F. Supp. 4 (E. D. S. C. 1955). There, the United States District Court held there was no showing that the entire work which the contractor was obliged to perform had been completed. In rejecting the claim of exclusion, the court observed that the insurer was in effect attempting to amend its policy to read "if the accident or occurrence takes place after *any*

*portion or part of* such operations have been completed * * *."[1] 129 F. Supp. 10. We deem it significant that Kaye deliberately canceled "completed operations" coverage in December 1968. That coverage, as SIC points out, is of a very different character from the coverage which Kaye actually purchased. The policy obtained by Kaye is an ordinary liability policy which protects the contractor from claims arising out of injuries or damage negligently caused by the contractor in the course of construction. It is designed to cover such negligent conduct as that causing damage from falling beams and other objects such as tools, as well as damage from the collapse of any part of a structure which has not been completed or, if completed, has not been put to its intended use. This is a circumscribed exposure very different from that included in a policy which covers completed operations. Policies covering defective or improper workmanship on a completed operation which fails in its use involve a substantially greater risk. Such coverage is, in effect, one which insures against a breach of warranty. The premiums for that risk are nearly double those for the limited hazards to which a contractor is exposed while the structure is in the process of construction. Equally significant is the necessity for a thorough investigation of the insured if completed coverage is to be afforded. Under such circumstances, the liability carrier must inquire into the contractor's ability to perform the work, his past experience, the length of time he has been in business, the competence of his employees and management, and the type of construction undertaken.

As we have indicated, prior to 1966 courts have had to address themselves to the question of when construction was completed. Clearly, the purpose of the amendment was to obviate that problem by treating the operation as completed when damage results after some portion of the work has been put to its intended use.

The fact that there has been no reported case construing this

---

[1] See, also, Annotation, 94 A. L. R. 2d 221, 243, dealing with the language of the exclusion used prior to 1966.

language is some evidence that policyholders and liability carriers have found it unambiguous. The question is not whether the work on the tower holding the bin was finished. The only inquiry necessary is whether it was put to its intended use. Although defendants argue that its use was prompted by a temporary emergency,[2] it was, nevertheless, the precise use for which the bin was constructed. The damage did not arise out of negligence, incompetence, or defects in the process of actually erecting the structure, which were risks assumed by the insurer. The damage, as all agreed, resulted from the "use" of the bins. Assuming, as we must for purposes of this litigation, that the tower collapsed because of such use, the policy in clear, unmistakable, and unambiguous terms excludes coverage by stating that the operation shall be "deemed" completed whether it is in fact completed or not.

■ The accident occurred on October 24, 1969, and SIC did not deny coverage until December 11, 1969. The trial court found that the primary purpose of the investigation conducted by SIC "appeared to be" to develop a policy defense. Kaye made no thorough independent investigation, and the court found that it could not effectively investigate the accident subsequent to December 11. The court thereupon held that SIC was estopped from asserting the completed operations exclusion. The court did not find that Kaye suffered any prejudice by its failure to investigate.

It is not disputed that SIC had a prompt and thorough investigation made by competent engineers. All of the data which it assembled was offered to Kaye, subject only to the proviso that the opinion of experts would be treated confidentially. Kaye declined to accept that condition. Since Kaye itself conducted the salvage operation, conducted its own limited investigation, and drew its own conclusions, no actual prejudice has been shown. Indeed, the court foreclosed inquiry into the matter of prejudice.

---

[2] See, Reliance Ins. Co. v. Dean Jones, 296 F. 2d 71, 94 A. L. R. 2d 217 (10 Cir. 1961).

Where, as here, all the facts concerning the cause of the accident have been thoroughly investigated, and all of such information is proffered to the insured, it is difficult to understand how prejudice could result from the delay in denying coverage. Significantly, the court made no finding of prejudice. We have held in a number of cases that under such circumstances the insurer is not estopped from denying coverage. Minnesota Mutual Fire & Cas. Co. v. Benson, 292 Minn. 314, 195 N. W. 2d 446 (1972). The record in this case does not, therefore, support the trial court's findings.

Accordingly, we hold as a matter of law that the completed operations exclusion applies to the facts in this case, and plaintiff is not estopped from asserting it. The judgment and order are therefore reversed with directions to enter judgment in favor of the plaintiff.

Reversed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.