PATRICIA RUTH TOLLEFSON v.
AMERICAN FAMILY INSURANCE COMPANY.
FEDERATED MUTUAL INSURANCE COMPANY v.
PATRICIA TOLLEFSON AND OTHERS.
AMERICAN FAMILY INSURANCE
COMPANY, APPELLANT.

226 N. W. 2d 280.

November 1, 1974—No. 44251.

*Erickson & Casey* and *Carl E. Erickson,* for appellant.

*Felhaber, Larson, Fenlon & Vogt* and *Edward J. Bohrer,* for appellant respondent.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Mary Jeanne Coyne,* and *O. C. Adamson II,* for respondent Federated Mutual Insurance Company.

Heard before Knutson, C. J., and Otis, Peterson, and MacLaughlin, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

American Family Insurance Company, an automobile liability carrier, appeals from a decision of the trial court requiring the company to provide coverage for Patricia Tollefson whose father, Robert Tollefson, was the named insured in a policy issued by American. The issue is whether American must continue to provide coverage for Patricia when she fails to notify the company that she is no longer a member of her father's household and accordingly is excluded from coverage with respect to non-owned cars. The trial court, with the aid of an advisory jury, held that the parties intended coverage and that the company waived and was estopped from asserting the exclusion and reformed the contract accordingly. We reverse.

In November 1968, while Patricia, then 17, was living with her parents in Brainerd and attending school there, she obtained her driver's license. She and her mother thereupon called on Frederick Casey, the local agent for American, to secure whatever liability insurance was necessary to cover her use of an automobile. She owned no car of her own, and Casey therefore added an endorsement to her father's policy naming Patricia as an ad-

ditional insured. For an additional premium of $28, which she paid, she was listed as an incidental driver using her father's car 10-percent of the time. The policy contained the following limitation on coverage for driving nonowned vehicles:

"The following are insured under the Liability Coverage:
\* \* \* \* \*
"b. With respect to a non-owned automobile,
\* \* \* \* \*
"(2) any relative \* \* \*."

"Relative" is defined in the policy as follows:

" '[R]elative' means a person related to the named insured who is a resident of the same household but does not include any person who, or whose spouse, owns a private passenger automobile."

Patricia left her family's household and became emancipated on June 9, 1969, when she moved to Minneapolis and took a position as a medical secretary at the Variety Club Hospital. While living there, on January 1, 1971, she became involved in a fatal accident near Madelia, Minnesota, out of which this litigation arose. A collision occurred between a car owned by Sandra Sue Hopp, which was driven by Patricia and insured by Farm Bureau Mutual Insurance Company, and a vehicle owned and operated by Arnold Joseph Nelson and insured by Federated Mutual Insurance Company. As a result of the accident, Mr. Nelson was killed and Patricia incurred medical expenses for her own injuries.

A claim for the death of Arnold Nelson by wrongful act was settled for $33,000 by Patricia, American, her father's liability carrier, Sandra Hopp, Farm Bureau, her liability carrier, and Federated, the Nelson liability carrier. The limit of liability of the Hopp insurer, Farm Bureau, was $25,000, which it paid the Nelson trustee. The remaining $8,000 is the subject of this litigation.

4

Two actions arising out of the $8,000 deficiency were consolidated and are here for disposition. In its policy covering the decedent Nelson, Federated included an uninsured or underinsured motorist provision on which the Nelson trustee asserts a claim against Federated. Accordingly, Federated has brought an action for declaratory judgment against the Tollefsons and American to require that American assume coverage for Patricia and to relieve Federated of liability under its underinsured motorist provisions. The other action was brought by Patricia against American seeking the same relief.

The trial court submitted the matter to an advisory jury which returned the following special verdicts: (1) Patricia was found not to be a resident of her father's household on January 1, 1971; (2) American was found to have waived any claim that its policy did not afford Patricia coverage; (3) American was found to have intended that Patricia have coverage at the time of the accident; (4) Patricia was found to have believed and intended that she had coverage at the time of the accident; and (5) the Tollefsons and American were found not to have ratified the contract of insurance following the accident. The trial court adopted these findings and in addition found that prior to January 1, 1971, American, through its agent, Frederick Casey, became aware that Patricia was living in Minneapolis and negligently assumed that she was a student and "that said knowledge was not based upon any misrepresentation or other conduct on the part of Robert Tollefson or Patricia Tollefson." The court concluded that American waived any claim it had that coverage was not afforded and held that American was estopped to deny coverage by its conduct and that of its agent. In addition, the court reformed the American policy to provide specific coverage for Patricia. American was directed to pay the Nelson trustee $8,000 and to pay Patricia $519.63 for medical expenses and $1,869.59 for attorney's fees incurred in her own defense.

Sometime between September and December 1970, Casey received from Mr. Tollefson a check from Patricia showing that

she had a Minneapolis address. The trial court's findings reflect the contention of respondents that this information was sufficient to impose liability on American on the theory of waiver or estoppel. Respondents argue that by accepting the $28 additional premium for carrying Patricia as a 10-percent incidental driver without confirming Casey's assumption that Patricia was still a student and a member of the Tollefson household, American is estopped from denying coverage. It is undisputed that American treated as members of the household unemancipated children who were students even if they were living away from home.

The principal issue then is whether the agent had an ongoing duty to inquire about any change of status of an insured, or whether that duty falls on those who claim coverage. We are aware of no authority, and none has been called to our attention, which requires an insurance company to ferret out at regular intervals information which brings policyholders within the provisions of an exclusion. The terms of the contract were clear and unambiguous. As to an unowned automobile, there was coverage only with respect to relatives of the named insured who were "residents of the same household." There was, therefore, no occasion to charge the jury, as the court did, that the language of the policy "must be liberally construed in favor of the insured and strictly construed against the insurer." We hold that under the circumstances of this case, Casey had no duty to determine whether or not Patricia continued to be a member of her father's household, until and unless he had information which would alert him to the fact that she was no longer a student. At the time of the accident she was approximately 20 years old and still of college age. It was therefore natural for Casey to assume, in the absence of notice to the contrary, that she continued to be a student and was going to school in Minneapolis.

Nor do we find an estoppel or waiver in the fact American accepted a 10-percent incidental driver premium in September 1970 to cover the following year. Casey had not at that time seen Patricia's Minneapolis address or learned that she was emanci-

pated. That fact was not disclosed to him until January 27, 1971, after the accident.

Respondents rely on the fact that American did not deny coverage until February 11, 1971. Although they claimed a ratification, the jury found against them on that issue. We hold that on this record American is not barred by waiver or estoppel because of the delay between January 27 and February 11 in advising the Tollefsons the coverage was denied. While insurance carriers have an obligation to act promptly after notice of facts which give rise to the defense of an exclusion, we do not find the period of approximately 2 weeks unreasonable in the absence of any showing of prejudice. Security Ins. Co. of Hartford v. Kaye Milling Supply, Inc. 297 Minn. 348, 354, 211 N. W. 2d 519, 522 (1973).

It is suggested by respondents that waiver and estoppel are supported by the fact that American continued to accept an extra premium without affording coverage and without offering a refund. The fact of the matter is that the 10-percent incidental driver endorsement did continue to afford Patricia coverage while driving her father's car. The fact that other persons driving her father's car with his consent were covered without an extra premium is not governing for two reasons. First, the extra premium is in recognition of the fact that as a member of his household she could be expected to drive it 10-percent of the time; and, second, that she was an unemancipated child. The record shows that after being advised that American denied coverage, the Tollefsons made no claim for a refund, and there is no indication that American did not stand ready to make such refund upon proper application. On these facts, we are of the opinion that neither estoppel nor waiver may be predicated.

Returning to the basic issue of the duty of an insured to advise the insurer of a change of status, it is significant that Patricia never communicated again with Casey after her initial interview with him to secure an endorsement when she obtained her driver's license. Although her father saw Casey quite regularly

because he seems to have paid premiums in person, the elder Tollefson never apprised Casey of his daughter's change of residence or emancipation. As between an insurance agent who, in this case, has hundreds of policies to service and an individual policyholder where the terms of the policy are clear, as they are here, it would be unreasonable to require the agent periodically to remind the policyholder of the conditions of the contract and make certain they are complied with. It is unrealistic to impose on the agent the ongoing duty of surveillance inherent in sustaining respondent's position in this case. Policyholders are constantly changing their personal situations in ways which increase or decrease their liability carriers' exposure. Changes in address and ownership of automobiles and the members of the immediate family eligible to drive and the number of vehicles operated, the occupation of the insured and his family, and the value of the property insured are but a few examples of constantly changing conditions which the insured is in a far better position to communicate to the insurer than the insurer is to determine on its own initiative.

Finally, we hold that the record does not sustain a finding that the parties intended coverage or that a reformation of the policy is required. The burden of proof in securing the reformation of an insurance policy is onerous.

"This court has repeatedly held that to reform a written contract or agreement mere preponderance of the testimony is not sufficient. The facts upon which he who seeks such reformation relies must be established by competent evidence, which is consistent and not contradictory, clear and not equivocal, convincing and not doubtful." Hockemeyer v. Pooler, 268 Minn. 551, 556, 130 N. W. 2d 367, 378 (1964).

"Where the right of reformation is predicated upon mutual mistake and there is no evidence of fraud or inequitable conduct, the evidence to justify reformation must be clear, precise, and convincing." Glaser v. Alexander, 247 Minn. 130, 137, 76 N. W. 2d 682, 686 (1956).

Here, the evidence falls far short of being "clear, precise, and convincing." When Patricia and her mother obtained insurance from Casey, no separate policy was issued to her, she owned no car of her own, and the only car available to her in the family was her father's. The premium she paid was nominal. No representation was made that she could drive a nonowned automobile if she was not a member of the household, and the unambiguous language of the policy excluded such coverage. While Patricia testified she thought she could drive nonowned cars after she was emancipated, there is no evidence whatever that Casey or American intended such coverage. To secure reformation of a policy, Patricia had the burden of showing that it did not reflect the agreement she and the company actually reached. There is no evidence in the record to support that finding. We therefore hold that Patricia was not entitled to a reformation of the policy with American to afford her coverage, and the order of the district court denying judgment notwithstanding the verdict or a new trial is accordingly reversed.

Reversed.

MacLAUGHLIN, JUSTICE (concurring specially).
I concur in the result.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.