**Willie M. ALWES, et al., Respondents,**

v.

**The HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, Appellant.**

**No. C9–84–2239.**

Court of Appeals of Minnesota.

Aug. 6, 1985.

Rolf E. Sonnesyn, Foster, Waldeck & Lind, Ltd., Minneapolis, for respondents.

Robert J. Schmit, Opperman & Paquin, Minneapolis, for appellant.

Heard, considered and decided by LESLIE, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

LESLIE, Judge.

The Hartford Life and Accident Insurance Co. appeals the judgment ordering it to pay the face amount of the life insurance policy for Fred Alwes, plus interest, costs, and disbursements. We affirm.

## FACTS

Fred Alwes was an employee of Naegele Outdoor Advertising, Inc. In 1978 he took a medical leave of absence because he was suffering from a cancerous brain tumor. He considered himself an employee throughout his medical leave and believed he would return to active, full-time employment after the necessary treatment. Alwes never returned to full-time employment. He died in 1979.

In 1978, Naegele decided it would change its life insurance carrier. Until that time, Naegele had a group life insurance policy with Provident Mutual Insurance Co., and

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Alwes was a covered employee under that policy.

One of the companies vying for Naegele's business was The Hartford Life and Accident Insurance Company (Hartford). During negotiations, Naegele told Hartford that it wanted the new policy to cover all employees covered under the old Provident policy. Hartford was given census data so that it could determine a rate to submit in its bid for the Naegele account. Hartford did not tell Naegele that disabled employees affected the rate offered.

To verify the census data and secure a beneficiary designation, the Naegele employees signed Hartford's "Group Insurance Enrollment Card." The printed enrollment card contained a sentence in small print, "Am actively at work at least 30 hours per week." Alwes signed this enrollment card, but wrote in large, legible print in the "occupation" block, "On disability at present."

Hartford received Alwes' enrollment card, but ignored the information he had printed on it. Apparently, Hartford routinely ignored all information in the "occupation" block.

During the negotiations, Hartford representative Charles Ambrosia said their policy would provide the same coverage as the Provident policy. A Naegele official testified that he thought Ambrosia meant that every individual employee covered by Provident would be covered by Hartford. However, respondents admitted Ambrosia made no false representations to them. No mention was made of Alwes or any other disabled employee during negotiations.

Hartford admits Alwes would have been accepted under their group policy if their representative knew about the situation, but with an upward rate adjustment. Naegele did not withhold information on Alwes to obtain a more favorable bid.

After Alwes died, Hartford refused coverage under the group life policy. Therefore, the Naegele Employee Health Plan (an unincorporated insurance trust which manages Naegele's various insurance programs) made a $30,000 interest-free loan to Willie Alwes (Fred's spouse) in exchange for a loan receipt agreement. Then, respondents Willie M. Alwes and the Naegele Employee Health Plan successfully sued Hartford under the terms of the group life insurance policy issued to Naegele.

## ISSUES

1. Did the trial court err by ruling Hartford must pay the face value of the life insurance policy under the theory of equitable estoppel?

## ANALYSIS

▮ 1. The appellate court need not defer to the trial court in reviewing questions of law. *Van de Loo v. Van de Loo,* 346 N.W.2d 173, 175 (Minn.Ct.App.1984). Therefore, this court may review de novo the application of equitable estoppel in this situation.

In its incorporated memo, the trial court applied equitable estoppel because Hartford's representations led Fred Alwes and Naegele to believe that Alwes was a covered employee. The representations consisted of Hartford's silence after Alwes submitted his enrollment card and Hartford's acceptance of premiums for coverage on Alwes.

Appellant argues that the trial court improperly applied estoppel to enlarge coverage of the insurance policy, in opposition to the doctrine enunciated in *Shannon v. Great American Insurance Co.,* 276 N.W.2d 77 (Minn.1979). In *Shannon,* the insured tried to "enlarge" the amount of coverage he could recover when his building was destroyed by fire. The policy had a $15,000 limit on recovery. However, the insurance agent offered $17,965 to settle the claim. The insured argued that the offer to settle constituted a waiver of the policy limits, and the insurer was therefore estopped from imposing those limitations. The Minnesota Supreme Court said estoppel could not be used to enlarge the coverage amount. *Id.* at 78.

The *Shannon* principle intends to prevent insured persons from "creating" coverage which does not exist. For example, the Wisconsin Supreme Court said estoppel could not "create" an insurance policy for the new owner of a farm to which the old insurance policy had not been assigned. *Madgett v. Monroe County Mutual Tornado Insurance Co.*, 46 Wis.2d 708, 176 N.W.2d 314 (1970). However, the rule does not mean that estoppel cannot be applied in insurance cases where misrepresentation or material omission occurs.

■ Generally, five elements must be shown to prove equitable estoppel: (1) misrepresentation of a material fact; (2) the misrepresentation must be knowing; (3) there must be an intention that the misrepresentation be acted upon; (4) the party asserting estoppel must not have had knowledge of the true facts; and (5) the party asserting the estoppel must have relied upon the misrepresentation with detriment. *Transamerica Insurance Group v. Paul*, 267 N.W.2d 180, 183 (Minn.1978).

■ However, the conduct of the party to be estopped need not consist of affirmative acts or words. It may consist of silence or a failure to act when there is a duty to speak or act. Second, the party to be estopped need not actually know the facts, if the circumstances are such that knowledge is necessarily imputed to that party. Third, the party to be estopped need not have acted with fraudulent intention to deceive, if that person should have known it was natural and probable the plaintiff would rely on those actions. *Browning v. Browning*, 246 Minn. 327, 331, 76 N.W.2d 100, 103 (1956). (Cite omitted.) That is, negligence takes the place of intent to deceive, where there is a duty to disclose. *See* 31 C.J.S. *Estoppel,* § 102 (1964).

The issue concerns what duties may be imposed on insurance companies. In particular, did Hartford have a duty to inspect the employees' enrollment cards and give notice that disabled employees could not be covered without an increased rate?

Appellant argues that there was no duty of notice, citing *Tollefson v. American Family Insurance Co.*, 302 Minn. 1, 226 N.W.2d 280 (1974). There, the Minnesota Supreme Court said the insurer's duty does not include checking to see if the status of the insured has changed, such that insured may be ineligible for coverage. The court was concerned about imposing an "ongoing duty of surveillance." *Id.* at 7, 226 N.W.2d at 284. However, the duty of "ongoing surveillance" is more burdensome than a duty to initially give notice about disabled employees.

■ An insurer's failure to inquire, when a basis for inquiry is set out on the application, may constitute a waiver of the right to use the nondisclosure as a basis for denying coverage. *Domke v. Farmers & Mechanics Savings Bank*, 363 N.W.2d 898, 900 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. June 14, 1985). There, insured said on an application that he had a "slight" hearing loss. Insurer never investigated before it took action on the application, nor did it include language excluding coverage for pre-existing conditions in its certificate of insurance. This court said insurer could not deny coverage. *See Pesina v. Juarez*, 288 Minn. 379, 181 N.W.2d 109 (1970) (where insurance agent said he would send a renewal notice and did not, the court applied equitable estoppel to grant coverage). *See also Freeman v. Massachusetts Mutual Life Insurance Co.*, 27 Mich.App. 572, 183 N.W.2d 832 (1970).

■ Here, Alwes and Naegele were led to believe Hartford's policy covered all employees. The company made several affirmative mistakes or omissions: (1) it did not read Alwes' enrollment card which stated he was "disabled at present"; (2) it nonetheless accepted premiums on behalf of Alwes as if he were to be covered; (3) it never sent the policy coverage booklet or "certificates" to Naegele and its employees.

Under these facts, the court did not err by applying equitable estoppel.

## DECISION

We affirm the decision of the trial court.