In re the **LIQUIDATION OF EXCALIBUR INSURANCE COMPANY.**

No. C7–94–524.

Court of Appeals of Minnesota.

Aug. 2, 1994.

Peter A. Koller, Michael J. Ahern, Moss & Barnett, Minneapolis, and Roger C. Landrum, Roger C. Landrum, P.A., Jackson, MS, for appellants Colorado Ins. Guar. Ass'n and Western Guar. Fund Services.

Robert J. Hennessey, Charles J. Lloyd, Lindquist & Vennum, Minneapolis, for respondent Com'r of Commerce.

Considered and decided by AMUNDSON, P.J., and KALITOWSKI and HOLTAN *, JJ.

## OPINION

HOLTAN, Judge.

Appellants Colorado Insurance Guaranty Association and Western Guaranty Fund Services appeal the district court's finding that certain losses were not covered and therefore they should not have defended insureds under a policy issued by Excalibur Insurance Company. The policy was assigned to appellants for administration in Excalibur's liquidation. Further, the district court ruled that respondent Commissioner of Commerce could not be estopped from recommending that the district court deny appellants' claims. Because the Insurers Rehabilitation and Liquidation Act requires a liquidator to investigate and review all claims and gives the district court the power to approve, disapprove, or modify the liquidator's report on claims, we affirm.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

In 1978, Cycles, Ltd. (Cycles) contracted with W.J. Digby, Inc. (Digby) to sell its over-the-road interstate trucking business. The sale was subject to Interstate Commerce Commission (ICC) approval under conditions that were acceptable to Digby. Pending ICC approval, Digby leased Cycles' trucking equipment for an amount equal to Cycles' monthly payments on the equipment. Digby thus took possession of 98 pieces of Cycles' equipment as soon as the parties signed the lease agreement. Digby also agreed to loan Cycles the $200,000 purchase price until the ICC approved the sale.

In August 1979, Digby purchased from Excalibur Insurance Company (Excalibur) a comprehensive business liability and comprehensive physical damage policy. When it purchased the policy, Digby declined coverage for loss to its owned automobiles, which included Digby's semi-tractors and trailers and the trucking equipment it leased from Cycles. Digby discontinued the policy in August 1981.

In May 1980, the ICC approved the sale of Cycles to Digby, but under conditions unacceptable to Digby. As a result, Digby terminated the agreement with Cycles. At the time Digby terminated the agreement, it retained only 18 trailers from the 98 pieces of equipment it originally leased from Cycles. The other 80 pieces of equipment had been repossessed, returned, or destroyed. Although Digby was obligated to return the equipment to Cycles, it did not do so because Cycles had not repaid the $200,000 Digby loaned Cycles. Digby eventually sold the 18 trailers and kept the proceeds.

In August 1980, Cycles commenced a breach of contract action against Digby in federal district court for the southern district of Mississippi. The action was stayed during the pendency of an Arkansas bankruptcy proceeding. Excalibur claims that it did not receive notice of Cycles' lawsuit against Digby until early February 1986, although Digby's attorney testified that he notified Excalibur of the claims on August 5, 1985, and demanded defense.

Excalibur already had been in liquidation since September 5, 1984. Excalibur sent Digby's file to appellants Colorado Insurance Guaranty Association and Western Guaranty Fund Services with the notation, "for your handling." In March 1986, appellants contacted H.T. Cole, a member of respondent's staff, to ask if he knew of a Mississippi attorney. Cole recommended Roger Landrum (Landrum). With the Cycles trial scheduled to begin at the end of June 1986, appellants contacted Landrum on June 23 and asked him for his opinion on whether the Excalibur policy required appellants to defend Digby. Landrum did not receive the file until June 24, and issued a qualified opinion on June 26 that the policy supported a duty to defend. Landrum, however, noted in his opinion that his analysis was rendered on short notice and without access to all of the facts.

Based on Landrum's recommendation, appellants agreed to defend Digby under a reservation of rights. Respondent did not learn about this agreement until after November 1990.

Cycles won the lawsuit against Digby in May 1987, but the United States Court of Appeals for the Fifth Circuit reversed the judgment and dismissed the action for lack of personal jurisdiction in Mississippi. Cycles then refiled the lawsuit in Arkansas. Appellants continued to defend Digby in the second action. Meanwhile, on May 9, 1988, respondent wrote to appellants, stating that "it was very questionable that any coverage could apply" under Digby's policy with Excalibur. When respondent learned that appellants continued to defend Digby, respondent recommended to Ramsey County District Court that it deny Digby's claim for defense and indemnity.

As a result of respondent's recommendation, the district court held a disputed claim hearing. Appellants filed an appearance in the hearing and participated as a party on its subrogation claim. The district court denied all claims.

## ISSUES

I. Did the district court err in concluding that appellants had no duty to defend Digby under the Excalibur policy?

II. Is respondent estopped from recommending denial of appellants' reimbursement claim based on respondent's prior conduct and public policy?

## ANALYSIS

On appeal from a judgment, this court's standard of review is limited to deciding whether the trial court's findings are clearly erroneous and whether it erred in its legal conclusions. *Citizens State Bank of Hayfield v. Leth,* 450 N.W.2d 923, 925 (Minn.App. 1990). When the trial court's findings are reasonably supported by the evidence, they are not clearly erroneous and must be affirmed. *Id.*

## I.

■ Appellants argue that the district court erred in concluding that it had no duty to defend Digby under the Excalibur policy. We disagree. An insurer's duty to defend arises when the underlying complaint against the insured alleges any facts that might fall within the coverage of the policy. *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1089 (Colo.1991). An insurer seeking to avoid its duty to defend an insured bears a heavy burden. *Id.* In this case, Cycles' complaint and amended complaints alleged breach of contract for Digby's failure and refusal to return Cycles' equipment when Digby terminated the agreement and conversion. In order to determine whether either of these claims is covered by the Excalibur policy, this court must examine the policy itself.

■ The construction and effect of a contract presents a question of law, unless an ambiguity exists. *Trondson v. Janikula,* 458 N.W.2d 679, 681 (Minn.1990). In construing an insurance policy, the language must be construed according to the terms the parties have used, and the language must be given its ordinary and usual meaning. *Dairyland Ins. Co. v. Implement Dealers Ins. Co.,* 294 Minn. 236, 244–45, 199 N.W.2d 806, 811 (1972).

■ Digby's policy with Excalibur limits coverage to bodily injury, personal injuries, and property damage "to the tangible property of others, including loss of use of the damaged property." The policy, however, does not cover property damage for the insured's own equipment, which by the policy's terms includes leased equipment. Excalibur therefore was not liable for the 80 pieces of Cycles' equipment that Digby lost through repossession or destruction while Digby leased the equipment under its agreement with Cycles.

■ Because the policy provides "blanket contractual liability coverage" by omission, appellants believe that the policy provides coverage for Cycles' breach of contract claim. We disagree. "Contractual liability coverage" does not cover claims for breach of contract, but only covers tort liabilities of third parties that the insured has assumed by contract with the third party. *See Musgrove v. Southland Corp.,* 898 F.2d 1041, 1044 (5th Cir.1990) (contractual liability coverage is coverage of an insured's contractual assumption of a third party's liability). Accordingly, Cycles' breach of contract claim is not covered under the Excalibur policy.

■ We also reject appellants' claim that Cycles' conversion claim is covered by the Excalibur policy. The policy covers "occurrences which take place during the policy period," and defines "occurrence" as

a happening or series of happenings arising from or due to one event and resulting in bodily injury, personal injury or property damage which you neither expected nor intended.

Digby's conversion of Cycles' equipment consisted of a conscious decision to retain the equipment after it terminated its agreement with Cycles until Cycles repaid the $200,000 Digby loaned it. Digby's conduct therefore does not constitute an unexpected or unintended event that would satisfy the definition of "occurrence." *See Inland Constr. Corp. v. Continental Casualty Co.,* 258 N.W.2d 881, 883 (Minn.1977) (no duty to defend where alleged facts did not constitute an "occurrence" and because the claimed conversion did not cause "property damage" within the contemplation of the policy); *see also Red Ball Leasing, Inc. v. Hartford Accident & Indem. Co.,* 915 F.2d 306, 309–10 (7th Cir.

1990) (a volitional act does not constitute an "accident" or "occurrence"). Cycles' conversion claim therefore is not covered by Excalibur's policy.

Appellants argue that the Excalibur policy should cover property damage occurring after July 1, 1980, the date Digby's equipment lease with Cycles ended. We disagree. After July 1, 1980, there was no physical damage or destruction to the remaining equipment that would qualify as property damage for the purposes of policy coverage. All that occurred was that Digby converted the equipment by keeping it and later selling it to a third party. Because we conclude that the policy did not cover conversion, we hold that there is no coverage for Digby's conduct after July 1, 1980.

## II.

■ Appellants argue that respondent should be estopped from denying appellants' claim for reimbursement of defense costs in the Cycles litigation because respondent did not indicate its intention to disapprove appellants' claim until 1993, when respondent already knew for years that appellants were defending Digby. Estoppel is ordinarily a question of fact and the district court's decision will not be disturbed unless it is manifestly and palpably contrary to the evidence. *In re Westling Mfg., Inc.*, 442 N.W.2d 328, 331 (Minn.App.1989) (citing *Northern Petrochemical Co. v. United States Fire Ins. Co.*, 277 N.W.2d 408, 410 (Minn.1979)), *pet. for rev. denied* (Minn. Aug. 25, 1989).

■ In order to justify estopping respondent, appellants must show (1) respondent's misrepresentation of a material fact, (2) knowing misrepresentation, (3) respondent's intent to induce action as a result of the misrepresentation, (4) that appellants had no knowledge of the true facts, and (5) that appellants relied upon the misrepresentation to its detriment.[1] *Alwes v. Hartford Life & Accident Ins. Co.*, 372 N.W.2d 376, 379 (Minn.App.1985). Because the record

reveals no knowing misrepresentation by Excalibur, we affirm the district court's refusal to apply the doctrine of estoppel in this case.

■ Appellants' evidence of respondent's knowing misrepresentations consists of respondent's referral of Digby's file to appellants "for your handling," a report by Cole, various correspondence from respondent regarding seeking reimbursement from Digby of attorney fees appellants had paid, respondent's failure to object to appellants' defense of Digby, and Cole's suggestion that appellants obtain a coverage opinion and recommendation of Landrum to provide that opinion. Appellants argue that this evidence demonstrates that Excalibur intended to allow appellants to make the ultimate decision regarding coverage and that Excalibur would reimburse appellants if appellants defended Digby.

We conclude that appellants' evidence amounts to no more than reliance on implication. Nothing in any of respondent's correspondence or Cole's documents indicates respondent's intention to allow appellants to make the ultimate decision regarding coverage or represents to appellants that Excalibur would reimburse appellants for defending Digby. There is, however, evidence that once respondent learned that appellants provided a defense in the first Cycles litigation, he questioned the basis for appellants' determination that there was a duty to defend and encouraged a staff member to contact appellants to determine why appellants defended Digby. We also find in Cole's suggestion that appellants seek a coverage opinion from Landrum no attempt to mislead appellants into believing that respondent would acquiesce in Landrum's recommendation. In fact, respondent raised questions about Landrum's opinion and stated in at least one letter that "it was very questionable that any coverage could apply."

Appellants argued in their brief and at oral argument that public policy compels this

---

1. Because appellants' claim is against the Commissioner of Commerce, they also must demonstrate that the government entity engaged in "affirmative misconduct, rather than simple inadvertence, mistake, or imperfect conduct." *REM–Canby, Inc. v. Minnesota Dep't of Human Servs.*,

494 N.W.2d 71, 74 (Minn.App.1992) (citing *Mesaba Aviation Div. v. County of Itasca*, 258 N.W.2d 877, 880–81 (Minn.1977)), *pet. for rev. denied* (Minn. Feb. 25, 1993). There is no affirmative misconduct here, and thus no justification for applying estoppel to respondent's conduct.

court to apply the doctrine of estoppel, claiming that any other result will undermine the reciprocal working relationship that exists between liquidators and state guaranty funds because everyone operates the way appellants operated in this case.[2] We disagree.

Minnesota law requires a liquidator to "review all claims duly filed in the liquidation and * * * make such further investigation as the liquidator deems necessary." Minn.Stat. § 60B.45, subd. 1 (1992). "As often as practicable, the liquidator shall present to the court reports of claims against the insurer with recommendations." *Id.* Respondent thus cannot relinquish to appellants his statutory responsibility to evaluate claims and recommend whether they should be covered under the liquidated insurance company's policy. Furthermore, respondent cannot give appellants authority to decide whether or not there is coverage under the Excalibur policy. Under our statute, the district court determines coverage unless the liquidator has made an agreement to settle a claim for $500 or less. *See* Minn.Stat. § 60B.45, subd. 2 (1992) ("court may approve disapprove, or modify any report on claims by the liquidator, except that the liquidator's agreements with other parties shall be final and binding on the court on claims settled for $500 or less.").

In view of our statutory scheme, we find irrelevant Landrum's opinion that Excalibur's policy covered Cycles' claims, thus triggering appellants' duty to defend. The ultimate determination of coverage belongs to the district court, and appellants should have known that. Because the insurance industry is highly regulated, appellants are charged with knowing Minnesota law where they submit claims against a company in liquidation regulated by Minnesota law. Accordingly, respondent cannot be estopped from exercising his statutory obligations.

2. In fact, appellants' view would undermine the underlying purpose of the Minnesota Insurance Guaranty Association, Minn.Stat. ch. 60C, which is to provide protection for policyholders of and claimants against insolvent insurers. *Maxwell Communications v. Webb Publishing Co.*, 518 N.W.2d 830, 832 (Minn.1994). The chapter excludes claims by insurance industry creditors.

## DECISION

The district court properly denied coverage under Excalibur's policy. Respondent cannot be estopped from recommending no coverage under Minn.Stat. § 60B.45.

**Affirmed.**

*Id.;* Minn.Stat. § 60C.09, subd. 2(2) (1992). Accordingly, the Guaranty Act "does not provide a solvent substitute for an insolvent insurer," and "is not a fund for the protection of other insurance companies from the insolvencies of fellow members." *Maxwell Communications,* 518 N.W.2d at 833.