_____

No. 94-3777
_____

National Farmers Union Standard  *
Insurance Company,               *
                                 *
          Appellant,             *
                                 *  Appeals and Cross-Appeal from
     v.                          *  the United States District Court
                                 *  for the District of
Souris River Telephone Mutual    *  North Dakota.
Aid Cooperative and Warren       *
Hight,                           *
                                 *
          Appellees.             *

_____

No. 95-1087
_____

National Farmers Union Standard  *
Insurance Company,               *
                                 *
          Appellant,             *
                                 *
     v.                          *
                                 *
Souris River Telephone Mutual    *
Aid Cooperative and Warren       *
Hight,                           *
                                 *
          Appellees.             *

_____

No. 95-1214
_____

National Farmers Union Standard  *
Insurance Company,               *
                                 *
          Cross-Appellee,        *
                                 *
     v.                          *
                                 *
Souris River Telephone Mutual    *
Aid Cooperative and Warren       *
Hight,                           *
                                 *
          Cross-Appellants.      *

Submitted:  October 18, 1995

Filed:  January 31, 1996

Before BOWMAN, FLOYD R. GIBSON, and WOLLMAN, Circuit Judges.

BOWMAN, Circuit Judge.

This is a complex insurance coverage case.  The Souris River Telephone Mutual Aid Cooperative sought coverage for the death of one of its employees from its insurer, National Farmers Union Standard Insurance Company (NFU).  After lengthy proceedings in the District Court, a jury found for the cooperative and its general manager Warren Hight (collectively, SRT).  The District Court entered judgment on the verdict and awarded SRT damages in the amount of $371,906.30 plus prejudgment and postjudgment interest. The court subsequently entered an order granting SRT's motion for attorney fees in the amount of $105,488.65 but denying SRT's claim for $10,422.50 in paralegal fees.  NFU now timely appeals the judgment entered against it (No. 94-3777).  NFU also appeals the order awarding attorney fees to SRT (No. 95-1087).  SRT cross-appeals the order denying its request for paralegal fees (No. 95-1214).  We reverse the judgment entered on the jury's verdict and remand this case to the District Court for entry of judgment in favor of NFU.  The award of attorney fees to SRT is vacated, and SRT's cross-appeal from the order denying its request for paralegal fees is dismissed as moot.

I.

Thomas Schettler, an employee of SRT, died when he fell from the roof of an office building in Sioux Falls, South Dakota, on

-2-

November 14, 1989, while he was installing a satellite television dish. SRT is headquartered in Minot, North Dakota, and Schettler lived and ordinarily worked for SRT in North Dakota. In fact, Schettler's death in Sioux Falls occurred on the first day in at least twenty years that SRT had any of its employees perform work outside of North Dakota. The work in Sioux Falls was being performed by SRT on behalf of Hughes Network Systems pursuant to a contract between SRT and Hughes that the parties signed on August 9 and August 14, 1989, respectively.

Schettler's widow filed a claim for death benefits with the North Dakota Worker's Compensation Bureau (the Bureau). Pursuant to N.D. Cent. Code § 65-08-01(2) (Supp. 1989), which became effective July 27, 1989, the Bureau dismissed the claim because Schettler's death occurred at an identifiable out-of-state job site and thus was not incidental and referable to Schettler's principal employment in North Dakota. SRT could have covered its employees working in South Dakota through the Bureau at no additional cost by obtaining a certificate of extraterritorial coverage. North Dakota and South Dakota have reciprocal agreements, and South Dakota regularly approves requests by the Bureau to cover employees of North Dakota companies working in South Dakota. SRT, however, never notified the Bureau that it would have employees working in South Dakota. The Supreme Court of North Dakota affirmed the Bureau's decision to deny benefits. SRT v. North Dakota Workers' Compensation Bureau, 471 N.W.2d 465 (N.D. 1991).

While SRT was appealing the Bureau's decision, Schettler's widow filed wrongful death actions against SRT in South Dakota and North Dakota state courts. SRT turned to its insurer, NFU, to determine whether SRT's insurance policies with NFU provided coverage for Schettler's death. NFU then filed this action in the District Court seeking a declaratory judgment that none of SRT's policies covered the loss; SRT filed a counterclaim alleging that the loss was covered or that NFU was negligent in not providing the

-3-

appropriate coverage. Originally, Mrs. Schettler was also named as a defendant by NFU. NFU and SRT, however, settled Mrs. Schettler's claims and both companies contributed equally to the settlement. The declaratory judgment action continued in order to determine whether either NFU or SRT could recover from the other the amount it paid to Mrs. Schettler.

SRT claimed coverage under three insurance policies it had in force through NFU at the time of Schettler's death: (1) a Rural Utilities Insurance Plan (RUIP), which is a general commercial liability policy; (2) a Commercial Umbrella Liability Policy (CULP); and (3) a Directors, Officers, and Managers Liability Insurance Policy (DOM). NFU sought a judgment declaring that Schettler's death was not covered by any of these policies. In its counterclaim, SRT alleged that Schettler's death was covered and requested a declaratory judgment to that effect. Additionally, SRT alleged that, even if there was no coverage under the three NFU policies, NFU or its agents were negligent when they failed to provide a stop-gap endorsement to SRT's RUIP and that such an endorsement would have covered Schettler's death. SRT also contended that NFU was negligent in other, unspecified ways by failing to provide SRT with appropriate insurance coverage.

The District Court granted partial summary judgment to NFU, holding that the RUIP and the CULP issued by NFU to SRT do not provide coverage for the loss here at issue. SRT has not appealed the court's grant of partial summary judgment, and thus no issues concerning the RUIP and the CULP are before us. In the same order, the court refused to grant summary judgment with respect to the DOM policy, holding that as a matter of law the DOM policy covered SRT for any losses SRT incurred as a result of the negligent acts or omissions of its general manager Warren Hight. The case proceeded to trial, and the court submitted the question of Hight's negligence to the jury. The court also submitted to the jury SRT's negligence counter-claims against NFU. The jury returned a special

verdict in which it found that (1) Hight was "negligent in failing to ensure that SRT had secured extraterritorial workers compensation coverage"; (2) "NFU or one of its agents [was] negligent in failing to provide the Stop Gap endorsement on the 1989 RUIP"; and (3) "NFU or one of its agents [was] negligent in [some] other way in failing to provide proper insurance coverage for SRT." Verdict Form at 1, 2, 3, NFU v. SRT, No. A1-92-055 (D.N.D. Sept. 20, 1994). Based on the jury's verdict, the court entered judgment for SRT in the amount of $371,906.30 plus prejudgment and postjudgment interest. The court later entered an order awarding attorney fees in the amount of $105,488.65 but denying SRT's claim for $10,422.50 in paralegal fees. NFU appeals the court's ruling on the coverage afforded by the DOM policy, the judgment entered on the jury's verdict, and the attorney fees award. SRT cross-appeals the denial of its claim for paralegal fees.

## II.

NFU argues that the District Court erred when it held that the DOM policy covered SRT for losses it incurred as a result of the negligence of its general manager Warren Hight. The interpretation of an insurance policy is a matter of state law. Bell Lumber & Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995). "We review questions of state law de novo," without giving any deference to the District Court's decision. Id.

The DOM policy at issue in this case provides that NFU will pay on behalf of SRT any "loss" that results from "any . . . claims made during the policy period . . . against each and every Director, Officer or Manager by reason of any Wrongful Act for which the Insured may be required or permitted by law to indemnify such Director, Officer or Manager." DOM Policy at 1, reprinted in Appellant's Appendix vol. I at A53. SRT's theory of the case is that SRT itself has a claim against Hight for his negligent failure

-5-

to ensure that extraterritorial workers' compensation coverage was obtained for SRT's employees working in South Dakota. SRT contends that its claim against Hight would be successful and that this loss to Hight as a result of SRT's claim is a loss for which SRT could indemnify Hight. Because the DOM policy does not specifically exclude coverage for claims made by SRT against its own directors, officers, or managers, SRT contends that the DOM policy covers its claim against Hight.

We conclude that SRT's theory of the case is fatally flawed. A condition precedent of coverage under the DOM policy is a "loss" to a director, officer, or manager. While we agree with SRT that SRT need not actually bring a lawsuit against Hight to trigger the coverage of the policy, the plain language of the policy at least requires SRT to show that Hight would incur a loss if SRT pursued its negligence claim against him. In the circumstances of this case, SRT cannot show that Hight would suffer a loss if SRT pursued its claim because state law provides Hight with immunity against such a claim. Hight thus being insulated from loss, he would have no need for indemnification, and SRT thus could have no basis in fact for a claim under the DOM policy.

Hight's immunity is derived from the chapter of the North Dakota Century Code that relates to cooperative associations such as SRT. The code provides as follows:

> Directors, trustees, and officers, and the manager who is the person most responsible for carrying out the policies and directives of the trustees, officers, or board of directors, are immune from civil liability for any act or omission relating to their service or function as a director, trustee, officer, or manager, unless the act or omission constitutes gross or willful negligence or gross or willful misconduct.

N.D. Cent. Code § 10-15-31(1) (1995). Hight, as general manager, is "the person most responsible for carrying out" SRT's policies. He is thus immune from civil liability for his negligent acts and

omissions. Correspondingly, he is not immune if his acts or omissions constitute "gross or willful negligence or gross or willful misconduct." We note that SRT has not alleged that Hight was grossly or willfully negligent or that he engaged in gross or willful misconduct. Thus Hight is entitled to immunity from civil liability for any negligent failure to ensure that SRT obtained extraterritorial workers' compensation coverage.

Apparently, both SRT and the court below thought that NFU was attempting to amend the DOM Policy's definition of a "Wrongful Act" by referring to the statutory immunity provided by N.D. Cent. Code § 10-15-31(1) (1995). The court stated that

> SRT further argues that the civil liability standard articulated in N.D.C.C. § 10-15-31(1) was not incorporated, by reference or otherwise, into the DOM policy. SRT's argument on this point is sound. The agreement between NFU and SRT--the DOM policy--creates a duty to indemnify for losses sustained as a result of any `wrongful act' committed by a director, officer, or manager of SRT,[1] as defined by the DOM policy itself. Given that the policy's definition of a `wrongful act' does not make reference to gross or willful negligence or misconduct, this court cannot disregard the clear intent of the contracting parties by appending the standard of care articulated in the [statute].

Mem. & Order at 23, <u>National Farmers Union Std. Ins. Co. v. Souris River Tel. Mut. Aid Coop.</u>, No. A1-92-055 (D.N.D. Nov. 3, 1993).

---

[1]We note that this statement tends to show that the District Court misunderstood the duty imposed on NFU by the DOM Policy. NFU is not required to indemnify SRT against any loss it suffers as a result of a manager's wrongful act. NFU is required to pay SRT under the relevant terms of the DOM Policy only when a director, officer, or manager suffers a loss as a result of a claim based on "any Wrongful Act of a director, officer, or manager]" when NFU "may be required or permitted by law to indemnify such Director, Officer or Manager" against such a loss. DOM Policy at 1, <u>reprinted in</u> Appellant's Appendix vol. I at A53. This misunderstanding may be at the root of the District Court's erroneous refusal to grant NFU summary judgment on the issue of the scope of coverage afforded SRT by the DOM Policy.

The District Court misunderstood NFU's argument on this issue. NFU does not argue that the statute's standard of civil liability should be imported into the DOM policy. NFU merely points out, correctly in our opinion, that the express language of the policy requires Hight, the manager in question, to suffer some sort of loss. Under North Dakota law, however, Hight cannot suffer a loss as a result of a claim based on his negligent acts or omissions while serving as SRT's general manager. See N.D. Cent. Code § 10-15-31(1). Hight is immune from civil liability for such negligent acts or omissions. In the circumstances of this case, the putative claim of SRT does not expose Hight to any liability. Hight cannot suffer a loss, and thus there is no coverage for SRT under the DOM Policy. The District Court erred when it reached the opposite conclusion, and its judgment to that effect is reversed. Necessarily, the court also erred when it submitted to the jury the question of whether Hight was negligent in failing to ensure that SRT had secured extraterritorial workers' compensation coverage. As a matter of law, NFU is entitled to prevail on the issue of liability under the DOM policy.

### III.

We turn now to NFU's arguments regarding SRT's negligence counterclaims. NFU contends that the District Court should have granted NFU's motion for judgment as a matter of law because the evidence is insufficient to support the jury's findings that NFU or one of its agents was negligent. Specifically, NFU argues that there is insufficient evidence to prove that it was negligent (1) when it did not add an Employer's Liability/Stop-Gap Coverage Endorsement to SRT's 1989 RUIP or (2) when it failed otherwise to provide insurance that would have covered Schettler's death. We review de novo the denial of a motion for judgment as a matter of law, applying the same standards as the District Court. Nicks v. Missouri, No. 94-3752, slip op. at 8 (8th Cir. Oct. 12, 1995).

-8-

Under North Dakota law, the plaintiff in a negligence action has the burden to prove the four basic elements of a tort: duty, breach, injury, and proximate cause. Knorr v. K-Mart Corporation, 300 N.W.2d 47, 50 (N.D. 1980). In this case, SRT's burden, as the counter-claimant, is to prove (1) that NFU or one of its agents owed a duty to SRT, (2) that NFU or one of its agents breached its duty, (3) that SRT suffered an injury, and (4) that NFU's breach was the proximate cause of SRT's injury. We conclude that SRT did not produce sufficient evidence to prove that NFU breached its duty to SRT.

The starting point for a proper analysis of SRT's evidence regarding NFU's alleged breach is a consideration of the nature of NFU's duty to SRT. The North Dakota Supreme Court has adopted Minnesota's statement of the standard of care for insurance agents. Rawlings v. Fruhwirth, 455 N.W.2d 574, 577 (N.D. 1990). Under that standard of care, insurance agents must

> exercise the skill and care which a reasonably prudent person engaged in the insurance business would use under similar circumstances. This duty is ordinarily limited to the duties imposed in any agency relationship to act in good faith and follow instructions.

Id. (citing Gabrielson v. Warnemunde, 443 N.W.2d 540, 543 (Minn. 1989)). The Rawlings court also noted, however, that Minnesota recognizes "an expanded duty or standard of care may arise on the part of an insurance agent on the basis of a `special relationship' between the insurance agent and the insured." Id. In Born v. Medico Life Ins. Co., the Minnesota Court of Appeals held that whether an agent has a duty to inform an insured about "possible gaps in coverage depends on the relationship of the parties, specific requests of the insured, and the professional judgment of the agent." 428 N.W.2d 585, 589 (Minn. Ct. App. 1988). The District Court instructed the jury in a manner consistent with Rawlings and Born, and NFU does not challenge the instructions. Rather, NFU argues that SRT's evidence is insufficient to establish

-9-

a breach of duty by NFU and, therefore, that the District Court erred in denying its motion for judgment as a matter of law.

Considering first the general standard of care for insurance agents, we conclude that SRT produced insufficient evidence to show a breach of the standard of care by NFU. We note that if SRT's evidence is sufficient evidence of a breach, North Dakota law would require an insurance agent to advise an insured of a need for additional coverage when (1) the need arises as a result of the insured's entry into a new business activity in a state in which it has never done business before, (2) the agent is unaware of the new business activity in the new state, and (3) the venture into the new state occurs after the insurance policy has been purchased. No North Dakota cases are in point on this issue, but "[w]hen a state's highest court has not addressed the precise question of state law that is at issue, a federal court must decide `what the highest state court would probably hold were it called upon to decide the issue.'" Lenhardt v. Zoeller, 55 F.3d 377, 379 (8th Cir. 1995) (quoting Hazen v. Pasley, 768 F.2d 226, 228 (8th Cir. 1985)). In light of the fact that the North Dakota Supreme Court has adopted the Minnesota Supreme Court's statement of the duty an insurance agent owes to an insured, we look, as we believe the North Dakota Supreme Court would, to Minnesota precedents.

In Gabrielson v. Warnemunde the Minnesota Supreme Court reinstated a summary judgment in favor of an insurance agent. The court held that the agent breached no duty by failing to provide coverage for an insured's new boat when the insurance agent did not know the insured had purchased a new boat. The insured's old boat had been covered under his homeowner's insurance policy but the new boat was not covered because its engine exceeded the horsepower limitations of the policy. The court stated that insurance agents generally have "no `ongoing duty of surveillance' or `obligation to ferret out at regular intervals information which brings policyholders within the provisions of an exclusion.'" 443 N.W.2d

-10-

at 544 (quoting <u>Kashmark v. Western Ins. Cos.</u>, 344 N.W.2d 844, 847 (Minn. 1984), and <u>Tollefson v. American Family Ins.</u>, 226 N.W.2d 280, 283 (Minn. 1974), respectively).  The court reached its decision in part because

> [t]he insured bears the responsibility to inform the agent of changed circumstances which might affect the coverage of the insurance policy, because the insured is in a better position to communicate those changes than the agent could be expected to discover on his or her own initiative.

<u>Id.</u>  The court concluded that the agent "received no information to put him on notice that [the insured] had acquired a high powered boat, and therefore [the agent] cannot be liable for failing to discover that fact."  <u>Id.</u>  In <u>Tollefson</u> the court held that an insurance agent had not breached any duty by failing to provide additional automobile insurance coverage for an insured's daughter, who was no longer a student but was still of college age.  The court stated that the agent could not have breached any duty "until and unless he had information which would alert him to the fact that she was no longer a student" and thus no longer a member of the insured's household.  <u>Tollefson</u>, 226 N.W.2d at 283.

We are persuaded by the logic in the <u>Gabrielson</u> and <u>Tollefson</u> opinions, and we believe the North Dakota Supreme Court would be as well.  We thus conclude that for SRT to prevail on its negligence counterclaims, SRT must produce sufficient evidence to prove that NFU had notice of the change of circumstances that resulted in a possible need for additional insurance coverage, <u>i.e.</u>, that SRT would be sending employees to perform work at out-of-state sites.[2] SRT failed to provide any such evidence.

---

[2]It does not appear that any additional insurance would have been needed if SRT had applied to the North Dakota Workers' Compensation Bureau for an extension of SRT's workers' compensation coverage to employees working in South Dakota.  Such an extension would have been routinely granted at no cost to SRT.

It is undisputed that SRT failed to apprise NFU of the change of circumstances in any explicit way. It is also undisputed that NFU's agents could not have discovered the change of circumstances in an annual policy review because SRT entered into the Hughes contract, which resulted in SRT's performing work outside of North Dakota, only after SRT had purchased its insurance policies for the relevant policy year. SRT argues only that NFU should have known of the change of circumstances because NFU had made Hughes, at SRT's request, an additional insured under SRT's policies with NFU. SRT argues that NFU should have reviewed the Hughes contract to determine if any additional insurance was required. We do not find this argument persuasive. Even if NFU or its agents were under an obligation to review the Hughes contract, a question which we need not and do not decide, we conclude that a review of the contract would not have put NFU on notice that SRT would be sending its employees to work in other states. We have conducted the review of the contract that NFU allegedly should have undertaken, and we note that the contract does not, by its terms, obligate SRT to send its employees into South Dakota or any other state. Thus even if NFU had reviewed the contract in August 1989, NFU would not have known of the change of circumstances or the need for additional insurance.

In these circumstances, NFU or its agents did not breach a duty to SRT. To prove that NFU breached a duty to SRT, SRT was required to show that NFU or its agents knew of the change of circumstances that resulted in a need for additional insurance. The record is devoid of any evidence of such knowledge. We thus conclude that the North Dakota Supreme Court would find SRT's evidence of a breach insufficient as a matter of law. A contrary conclusion effectively would impose an unprecedented duty on insurers such as NFU to monitor the business operations of their insureds on a daily basis. Insureds are in a better position to know of changes in their operations that may affect insurance

-12-

coverage requirements; thus the law places the onus on insureds to inform their insurers of such changes.

Similarly, we conclude as a matter of law that SRT did not produce sufficient evidence of a special relationship to create a submissible case against NFU under the expanded duty of care included in the District Court's instructions. North Dakota has not defined what special circumstances would impose an expanded duty on an insurance agent, but Minnesota has imposed an expanded duty only in exceptional cases. <u>See</u>, <u>e.g.</u>, <u>Osendorf v. American Family Ins. Co.</u>, 318 N.W.2d 237 (Minn. 1982) (holding that agent owed affirmative duties because insured was farmer with limited education and reading skills, insured relied upon agent's expertise, and agent had visited farm regularly and should have been aware of need for additional insurance). Here, there is no evidence that any special relationship existed between SRT and NFU. To the contrary, the relationship was a rather ordinary, long-standing business relationship in which a telephone company purchased insurance from an insurance company through an insurance agent. Both parties are sophisticated and possess substantial business experience. Thus insofar as SRT based its claim on the expanded duty of care, NFU was entitled to judgment as a matter of law.

We hold that, as a matter of law, SRT has failed to show that NFU breached a duty to SRT. The District Court thus erred when it denied NFU's motion for judgment as a matter of law.

IV.

The judgment of the District Court in favor of SRT is reversed and the case is remanded for entry of judgment in favor of NFU on both its declaratory judgment action and SRT's counterclaims. The court's order awarding attorney fees to SRT is vacated. SRT's

cross-appeal of the order denying its request for paralegal fees is dismissed as moot.


A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.